Cotto Vives, Jueza Ponente
*1055 TEXTO COMPLETO DE LA SENTENCIA
La Sra. Marta Larissa Alvarado, el Sr. Rafael Silverio, la sociedad de bienes gananciales por ellos compuesta; la Sra. Carmen Muñoz, el Sr. Héctor Alvarado, la sociedad de bienes gananciales compuesta por ambos y Glamorous Nails Boutique, Inc. nos solicitan que revoquemos una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 8 de octubre de 2001. Aunque, en su sentencia, el foro a quo declaró sin lugar la demanda presentada por la Sra. Dolores Colón y Otros en cuanto a la reclamación de cumplimiento específico de contrato, el tribunal apelado determinó que los demandados responden por el rompimiento negligente e injustificado de las negociaciones entre las partes conducentes a una transacción de compraventa.
Inconformes, acuden ante nos los esposos Silverio Alvarado y le imputan al Tribunal de Primera Instancia la comisión de ocho errores, los cuales mencionaremos más adelante.
I
A continuación relacionamos los hechos según estipulados por las partes, conforme se desprenden de la sentencia emitida por el Tribunal de Primera Instancia. 
En enero de 2000, la demandada-apelante, Sra. Larissa Alvarado, Presidenta de Glamorous Nails, se comunicó por teléfono con la demandante apelada, la Sra. Dolores Colón, y le ofreció en venta su negocio de arreglo de uñas (Glamorous Nails). Del récord surge que, en esa ocasión, la apelante le preguntó a dicha parte, si deseaba comprar el referido negocio y le informó que el precio del negocio era de $350,000. La Sra. Colón quedó en consultar este asunto con su esposo, el Sr. AJdamuy. No obstante, manifestó que estaba interesada en adquirirlo. Posteriormente, la Sra. Colón llamó a la Sra. Alvarado y le notificó que, en efecto, tenía interés en adquirir el negocio, por lo cual le solicitó una reunión para comenzar las negociaciones. A esos fines, la Sra. Colón contrató a una Contadora Pública Autorizada, la Sra. Carmen Román, para que la asesorara sobre la compra del negocio.
Alrededor de marzo de 2000, las Sras. Colón y Alvarado se reunieron con la CPA Román y, entre otros asuntos, discutieron el precio de compraventa del negocio, reiterándose que era $350,000. Ese mismo mes, la Sra. Colón se reunió con la Sra. Alvarado y el Sr. Silverio para discutir la oferta de venta de los activos de dicha empresa. A tales efectos, la Sra. Colón, incluso, indagó con los esposos Silverio Alvarado sobre su *1056 disponibilidad para financiar parte del precio de compraventa.
Luego de la referida reunión, la Sra. Colón visitó el negocio para solicitar ciertos documentos, y la Sra. Muñoz —madre de la Sra. Alvarado — , le entregó un “libro rojo” en el cual llevaban los apuntes relacionados con las ventas diarias del negocio.
En otra ocasión, la Sra. Colón regresó al negocio y le hizo a la Sra. Muñoz una serie de preguntas relativas a los gastos, compras y suplidores de Glamorous Nails. Posteriormente, la apelada solicitó permiso para hacer un inventario de la tienda, el cual no se llegó a realizar. Finalmente, en la última reunión entre la Sra. Alvarado y la Sra. Colón —celebrada a fines de mayo o principios de junio de 2000 — , ésta expresó su conformidad con el precio de compraventa. Sin embargo, en su testimonio, la Sra. Alvarado manifestó que no estaba segura de que la transacción se efectuaría porque la demandante no le había entregado dinero alguno, por lo cual no había compromiso. De hecho, en vista de que habían transcurrido cerca de seis meses y no se había formalizado ninguna gestión con el banco, la Sra. Alvarado consideró que no existía ningún compromiso sobre la compraventa del negocio.
La compraventa del negocio Glamorous Nails no se materializó por circunstancias que los esposos Aldamuy Colón atribuyeron a la señora Alvarado y demás demandados.
Por consiguiente, la Sra. Colón demandó a la Sra. Alvarado por incumplimiento de contrato y daños y perjuicios. En su escrito, reclamó los gastos incurridos en, alegadamente, solicitar el financiamiento necesario para llevar a cabo el contrato de compraventa, además de las ganancias dejadas de percibir y las angustias mentales sufridas al no llevarse a cabo dicho contrato.
El 21 de noviembre de 2000, la Sra. Alvarado presentó ante el Tribunal de Primera Instancia una moción de desestimación en la cual expresó que la demanda no exponía hechos que justificaran la concesión de un remedio. El Tribunal de Primera Instancia denegó la desestimación solicitada. Ante dicha determinación, el 30 de marzo de 2001, la Sra. Alvarado contestó la demanda y el 20 de abril de 2001 se celebró la conferencia con antelación al juicio ante el tribunal a quo. Los días 27 y 28 de septiembre se celebró el juicio y el 8 de octubre de 2001, el Tribunal de Primera Instancia emitió su sentencia.
En su dictamen, declaró sin lugar la demanda contra los co demandados Glamorous Nails Boutique, Inc. y los esposos Alvarado Muñoz, así como también, denegó la solicitud de la Sra. Colón a los efectos de que se ordenara el cumplimiento específico del contrato de compraventa en vista de que no hubo tal compraventa. No obstante, resolvió que los esposos Silverio Alvarado responden por el rompimiento negligente, injustificado y doloso de las negociaciones. Les ordenó pagar $8,400 por los gastos incurridos por los esposos Aldamuy Colón en la tramitación de la compraventa y $10,000 por los daños ocasionados a la demandante, Sra. Colón, más las costas y $2,000 en concepto de honorarios de abogados.
II
En primer lugar, discutiremos los errores primero, tercero y sexto, alegados por la Sra. Alvarado, et al, en su recurso, por estar relacionados. En ellos, la parte apelante aduce, básicamente, que erró el Tribunal de Primera Instancia al ordenarle el pago de $10,000 a favor de los esposos Aldamuy Colón, en vista de que no se demostró que las actuaciones de la Sra. Alvarado fueran dolosas y fraudulentas. También alega que el dolo y el fraude no se alegaron conforme a la Regla 7.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 7.2, por lo que no procedía indemnización a este respecto. Por último, adujo que su conducta no fue dolosa, sino que, por el contrario, fue la parte apelada la que incurrió en dolo. Según discutiremos a continuación, ninguno de los tres errores se cometió.
El Art. 1213 del Código Civil, 31 L.P.R.A. see. 3391, establece tres requisitos para que exista un contrato, a *1057 saber: consentimiento, objeto y causa.
No obstante, se ha establecido que el vínculo obligacional entre las partes surge del acuerdo de voluntades que se manifiesta con la oferta y la aceptación. Sin una oferta completa, no puede haber una aceptación definitiva que perfeccione el contrato. Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517 (1982); Vila & Hnos., Inc. v. Owens Ill. de P.R., 117 D.P.R. 825 (1986).
Por otro lado, como sabemos, nadie está obligado a contratar. Por lo tanto, las partes no están obligadas a proseguir con las negociaciones hasta perfeccionar el contrato, sino que están en libertad de contraer el vínculo o de retirarse, según convenga a sus mejores intereses. Muñiz v. Copan, supra.
Ahora bien, existe una causa de acción al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, por el hecho ilícito del rompimiento injustificado de las negociaciones previas a suscribir un contrato. Esta se basa en que dicho rompimiento constituye un quebrantamiento de la buena fe, que impone a las partes un deber de lealtad recíproca en las negociaciones. Prods. Tommy Muñiz v. COPAN, supra. Esto se conoce como la doctrina de la culpa in contrahendo.
A estos efectos, el Tribunal Supremo expresó en Prods. Tommy Muñiz v. COPAN, supra, que:
“[E]l hecho de la arbitrariedad o injustificación de ese desistimiento, cuando razonablemente se pudiese esperar la conclusión de un acuerdo, constituye una actuación abusiva de ese derecho, por lo que pueden encuadrarse esos supuestos dentro del ámbito del Artículo 1.802 del Código Civil. ” (Enfasis suplido.)
Las negociaciones preliminares de un contrato generan una relación de carácter social que impone a las partes el deber de comportarse de acuerdo a la buena fe. Torres v. Gracia, 119 D.P.R. 698 (1987). Por otro lado, la amplia gama de supuestos sobre los cuales se puede imponer la responsabilidad civil precontractual hace necesario que la presente controversia se enfoque en la figura jurídica —ya sea culpa, dolo, fraude, buena fe o abuso de discreción— que responde más adecuadamente como fundamento para la solución del caso. Prods. Tommy Muñiz v. COPAN, supra; Torres v. Gracia, supra.
En el caso que nos ocupa, debemos determinar si actuó correctamente el Tribunal de Primera Instancia al imponerle responsabilidad a la Sra. Alvarado bajo el supuesto de responsabilidad preliminar por su retirada arbitraria de la compraventa en controversia. La parte apelante aduce que siempre estuvo disponible para reunirse con la Sra. Colón y ofrecerle la información de su negocio. Señala, además, que no sólo se reunió con la Sra. Colón en varias ocasiones, si que también con la Contadora Pública Autorizada contratada por ésta, la Sra. Carmen Román. Alega que, incluso, le proveyó un libro donde su mamá, la codemandada Sra. Muñoz, llevaba cuenta de los ingresos de Glamorous Nails. Es decir, existía un interés genuino por parte de la apelada por adquirir el negocio.
Por otra parte, la Sra. Colón admitió y la CPA Román —quien preparó varios informes financieros, solicitados por la apelada, con respecto a la compraventa — , testificó que nunca se presentó, en ninguna institución financiera, solicitud de préstamo alguno para obtener los $350,000 que era el precio acordado del negocio. La Sra. Colón había traído a colación la posibilidad de obtener dicho financiamiento porque no tenía el dinero disponible en efectivo.
Cabe destacar que de la página 70 de la transcripción de la prueba oral surge, además, que la CPA Román le propuso a la Sra. Colón que se comunicara con el Banco Eurobank para orientarse con respecto al financiamiento y allí un oficial le informó que también éste se podía obtener a través del Small Business Administration. También la Sra. Colón expresó que había sostenido conversaciones, aunque superficiales, con el oficial de crédito de Eurobank para coordinar la obtención del financiamiento para la compra del negocio. 
*1058 Según lo anterior, debemos concluir que aunque en este caso no está presente el acuerdo de voluntad que genera un contrato de compraventa, lo cierto es que las partes se encontraban en las conversaciones y gestiones previas a materializar dicho acuerdo. Por ello, hubo reuniones, se entregó información del negocio y las partes se mantuvieron en conversaciones de negociación hasta que la Sra. Alvarado manifestó que había desistido de la venta.
Tomando en consideración lo anterior fue que el Tribunal de Primera Instancia determinó que no procedía el cumplimiento específico del contrato de compraventa que pretendían suscribir las partes, en vista de que el acuerdo nunca se materializó.
Conforme a la doctrina vigente, expresada en el caso de Prods. Tommy Muñiz v. COPAN, supra, para determinar si el rompimiento de la negociación fue injustificado o arbitrario, es preciso considerar las circunstancias del rompimiento y, más específicamente, los siguientes factores:

“1. el desarrollo de las negociaciones,

2. cómo comenzaron,

3. el curso que siguieron,

4. la conducta de las partes durante su transcurso,

5. la etapa en que se produjo el rompimiento, y

6. las expectativas razonables de las partes en la conclusión del contrato, así como cualquier otra circunstancia pertinente conforme los hechos del caso sometidos a escrutinio judicial. ”

En el caso de epígrafe, no podemos concluir que la Sra. Colón estaba obligada a suscribir el contrato de compraventa con la apelante y, por consiguiente, el Tribunal de Primera Instancia no podía ordenarle el cumplimiento específico a dicha parte. Sin embargo, sí podía, como lo hizo, imputarle responsabilidad a la parte apelante por el rompimiento arbitrario de las negociaciones.
Según los hechos que surgen del expediente de autos, la Sra. Alvarado adujo —como razón para negarse a vender el negocio— que si concretaba la controvertida venta tendría que pagarle una gran cantidad de dinero al Departamento de Hacienda por concepto de contribuciones. Esto denota negligencia por parte de la apelante en el proceso de negociación del contrato, debido a que —a pesar de tratarse de la venta de un negocio que, alegadamente, le dejaba grandes ganancias y cuyo precio se estableció en $350,000 — , la Sra. Alvarado no consultó anticipadamente con un profesional las consecuencias contributivas que dicha transacción le acarrearía. Por el contrario, continuó en conversaciones con la Sra. Colón y, a última hora, al tener conocimiento de las referidas consecuencias, desistió de la venta del negocio. Como la misma apelante expresó, sus acciones demostraron que nunca tomó en serio el proceso de negociación del contrato de compraventa.
De esta manera, resolvemos que no erró el Tribunal de Primera Instancia al imputarle responsabilidad precontractual a la parte apelante por el rompimiento injustificado de las negociaciones para la venta de su negocio. En consecuencia, el primer y sexto error alegados en el recurso de apelación no se cometieron.
En cuanto al tercer error imputado, debemos señalar que la determinación de otorgar $10,000 a la Sra. Colón, en concepto de indemnización por las angustias mentales sufridas por ésta al no llevarse a cabo el negocio, está sostenida por la apreciación de la prueba testifical que hizo el Tribunal de Primera Instancia. La parte apelante no ha presentado argumentos que refuten la presunción de corrección que dichas determinaciones *1059 nos merecen. Por tal razón, en ausencia de pasión, prejuicio o parcialidad, este Tribunal no modificará dichas determinaciones. Argüello v. Argüello, 155 D.P.R. _ (2001), 2001 J.T.S. 127.
De la transcripción de la pmeba oral destacamos que la Sra. Colón, al hablar de sus angustias mentales, expresó que “tenía unas expectativas y unas ilusiones y la cosa estaba bien adelantada”. Incluso, dicha parte declaró que el rompimiento de las negociaciones la deprimió porque “[e]ra una cosa que yo quería en mi vida y que me fue ofrecido. Yo no lo busqué. Yo no busqué en un periódico la venta de ese negocio. Ilusioné a mi hija, ilusioné a mi esposo con unas expectativas bien. . . Sencillamente. . .” Véase, pág. 132 de la Transcripción de la Prueba Oral. Por último, la Sra. Colón expresó que esto lo demuestran “los mismos documentos y los profesionales que tuve que utilizar”.
El testimonio anterior fue creído por el tribunal apelado, por lo cual no será modificado por este Tribunal en ausencia de una demostración de pasión, prejuicio o parcialidad. Argüello v. Argüello, supra. Por lo tanto, el tercer error apuntado en el escrito de apelación tampoco se cometió.
Pasemos ahora a examinar el segundo y séptimo errores alegados por la apelante en su recurso, relacionados con la determinación de los daños que realizó el tribunal a quo en su sentencia.
Aduce la Sra. Alvarado que los gastos incurridos por la Sra. Colón —antes del rompimiento de las negociaciones con miras a concretar el acuerdo de compraventa — , no se establecieron mediante la presentación de prueba. También alega la apelante que erró el Tribunal de Primera Instancia al determinar que la apelada tenía “una expectativa razonable de que la venta se llevaría a cabo y ésta produciría una cantidad considerable de ingresos anuales.” Resolvemos que ninguno de los dos errores se cometieron. Veamos.
En su testimonio, la Sra. Alvarado claramente estableció que se comprometió a pagarle a la Sra. Colón los gastos en que ésta había incurrido durante el proceso de negociación entre éstas. Sin embargo, plantea que para ese entonces desconocía la cantidad que estaba envuelta.
Añade que, de buena fe, se comprometió a reembolsarle a la Sra. Colón los gastos incurridos en gestiones relacionadas a la compraventa del negocio. Cuando la apelada le indicó que dichos gastos ascendían a $8,400, los consideró excesivos, por lo cual le ofreció a la Sra. Colón un año de servicios gratis en el negocio para compensar por los referidos gastos.
Por otro lado, la Sra. Colón alega que contrató una Contadora Pública Autorizada para que la orientara en cuanto a la conveniencia de realizar el negocio y los planes para materializar el acuerdo. A estos efectos, el Tribunal de Primera Instancia tuvo la oportunidad de escuchar el testimonio, tanto de la Sra. Colón, como de la CPA Román, con relación a las gestiones realizadas por dicha asesora, y el mismo le mereció credibilidad.
A estos efectos, el testimonio de la CPA Román, demuestra que ella preparó varios estados financieros de Glamorous Nails para los años 1996 y 1999. También preparó unas proyecciones de estados de ingresos y gastos y flujo de efectivo desde el año 2001 hasta el 2010. Todo esto, sin contar con las ocasiones en las cuales se reunió con las Sras. Colón y Alvarado para discutir varios aspectos económicos del negocio. Como se puede apreciar, el trabajo realizado por la CPA Román debe conllevar un costo, el cual la Sra. Colón estableció en $2,000.
También surge del testimonio de la CPA Román que la Sra. Alvarado participó en, al menos, una reunión con ella. Además, la Sra. Colón testificó ante el foro a quo que había estudiado junto con la CPA Román el libro rojo de ingresos y gastos del negocio y que en esa conversación se discutieron las ganancias de Glamorous Nails.
*1060 Como expresamos,, la responsabilidad de la Sra. Alvarado deriva del rompimiento negligente de las negociaciones para la compraventa del negocio de uñas, a causa de lo cual, la Sra. Colón incurrió en gastos. Prods. Tommy Muñiz v. COPAN, supra. Por lo tanto, no erró el Tribunal de Primera Instancia al ordenar su reembolso.
Reiteramos que el testimonio vertido ante el tribunal apelado en cuanto a los señalamientos imputados en los errores segundo y séptimo le mereció entera credibilidad al Tribunal de Primera Instancia. En ausencia de pasión, prejuicio, parcialidad o error manifiesto, no intervendremos con las determinaciones de hechos y conclusiones de derecho que realizó el tribunal apelado a este respecto. Argüello v. Argüello, supra.
Finalmente, en cuanto a los errores cuarto, quinto y octavo imputados por la parte apelante al Tribunal de Primera Instancia, resolvemos que sí se cometieron. No obstante, ello no afecta lo resuelto en la presente sentencia.
El cuarto error imputado al Tribunal de Primera Instancia se refiere a la determinación de dicho foro de que la Sra. Alvarado no expuso razón alguna para negarse a vender.
La Sra. Alvarado aduce que no es correcto que no haya expuesto sus razones para no vender el negocio. Según expresó la propia Sra. Colón, la Sra. Alvarado le comentó que la razón por la cual no vendería su negocio era porque le tenía que pagar mucho dinero al Departamento de Hacienda si se realizaba la transacción. Véase, pág. 129 de la Transcripción de la Prueba Oral. Los esposos Silverio Alvarado también manifestaron que tenían la impresión de que la Sra. Colón ya no interesaba comprar el negocio debido al hecho de no haber realizado el inventario y que ésta, luego de su regreso de un viaje a Costa Rica, ni siquiera se comunicó con ella por mucho tiempo. De la transcripción de la prueba oral surge que, en efecto, la Sra. Alvarado expresó que ya no interesaba vender el negocio porque no le convenía en términos contributivos. Este hecho no fue refutado por la parte apelada. En consecuencia, resolvemos que el cuarto error señalado en el recurso de apelación de epígrafe fue cometido, pero sin consecuencias.
Por último, atenderemos los errores quinto y octavo, los cuales se refieren a la determinación hecha por el tribunal apelado de que los demandados incurrieron en conducta dolosa, culposa y fraudulenta cuando ocultaron su falta de capacidad para contratar y que la Sra. Alvarado no llevó a cabo gestiones como presidenta de la corporación para obtener la resolución corporativa para permitir la venta de Glamorous Nails. Resolvemos que los mismos sí se cometieron.
El hecho de que la Sra. Alvarado haya llevado a cabo, o no, gestiones como presidenta de la coiporación para obtener una resolución corporativa para permitir la venta de Glamorous Nails, no tiene consecuencias adversas. Págs. 15 y 17 de la sentencia. En primer lugar, el negocio era un negocio de familia, cuyos dueños eran los esposos Silverio Alvarado y los papás de la Sra. Alvarado, a saber, el Sr. Héctor Alvarado Tizol y la Sra. Carmen T. Muñoz.
Por otro lado, en ningún momento se ha planteado que la razón por la cual la compraventa del negocio no se llevó a cabo fue porque los demás accionistas de la corporación no estuviesen de acuerdo con la transacción. Por el contrario, del expediente se desprende que tanto el Sr. Silverio como la Sra. Muñoz, accionistas de la corporación, estaban al tanto de las negociaciones entre la Sra. Alvarado y la Sra. Colón. Incluso, fue la Sra. Muñoz quien le entregó a la apelada el libro rojo del negocio para que ésta le solicitara a la CPA Román que realizara los estudios financieros pertinentes.
Las corporaciones íntimas están reguladas por los Arts. 14.01 al 14.19 de la Ley General de Corporaciones de 1995, Ley 144 de 10 de agosto de 1995, 14 L.P.R.A. secs. 3201 a la 3219. En este tipo de corporación se da una relación intema distinta a la que se desarrolla en las corporaciones tradicionales, que son mucho más *1061 estructuradas. Los directores y accionistas se consideran más bien socios y asumen la posición de directores o accionistas únicamente en sus negociaciones con terceros. Liquilux Gas Corp. v. Berríos, Zaragoza, 138 D.P.R. 850 (1995).
De otra parte, el Art. 14.13 de la referida Ley, 14 L.P.R.A. sec. 3213, dispone como sigue:

“El que una corporación íntima no observe las formalidades o requisitos corporativos usuales en relación con sus facultades corporativas o la gestión de sus negocios y asuntos, no es fundamento para imponer responsabilidad personal a los accionistas por las obligaciones de la corporación. ”

En el caso de autos, por tratarse de una corporación íntima, la Sra. Alvarado tenía plena facultad para negociar la compraventa del negocio Glamorous Nails. Conforme al Art. 14.13 de la Ley General de Corporaciones de 1995, supra, no era necesario que dicha parte obtuviese una resolución corporativa formal para que se autorizara la referida venta. Además, como explicamos, las negociaciones se llevaron a cabo con el conocimiento y consentimiento de todos los accionistas de la corporación, todos los cuales, además, se involucraron en mayor o menor medida en las conversaciones y gestiones para la compraventa del negocio.
Por lo tanto, aunque fue incorrecta la determinación del Tribunal de Primera Instancia —con relación a que la Sra. Alvarado, al negociar la compraventa del negocio de arreglar uñas, actuó sin antes obtener una resolución corporativa con respecto a la compraventa del mismo — , ello no afecta la determinación que ahora tomamos de confirmar el dictamen apelado.
III
Con estos antecedentes, se confirma la sentencia apelada.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2004 DTA 53
1. Págs. 2 y 3 del Apéndice del escrito de apelación.
2. En el local de Glamorous Nails ubican también un “spa” y un negocio de venta de ropa, los cuales también forman parte de la corporación Glamorous Nails Boutique Inc. En el presente caso, sólo se interesaba vender el negocio de uñas y así se había establecido entre las partes.
3. Véase, pág. 129 de la transcripción de lapmeba oral.
4. Pág. 129 de la transcripción de la prueba oral.
5. Pág. 130 de la trancripción de la prueba oral.