MILTON TORRES, demandante y recurrido, *v.* NORA GRACIA y la SOCIEDAD LEGAL DE GANANCIALES, ETC., demandadas y recurrentes.

*Número:* R-84-240      *Resuelto:* 25 de noviembre de 1987

*Luis Roberto Santos,* de *Santos & Báez,* abogado de las recurrentes; *Jaime Márquez Torres,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Debemos decidir si el tribunal de instancia incidió al determinar que la prueba del demandante fue suficiente para establecer que la demandada había actuado negligente y dolosamente al romper las negociaciones sobre un contrato de compraventa. En apoyo de su dictamen, el tribunal aplicó la doctrina adoptada en *Prods. Tommy Muñiz* v. *COPAN,* 113 D.P.R. 517 (1982), que luego ratificamos en *Vila & Hnos., Inc.* v. *Owens Ill. de P.R.,* 117 D.P.R. 825 (1986).

Analizada la totalidad de la prueba presentada, resolvemos que la prueba no era suficiente para establecer las causas de acción por incumplimiento de contrato y daños. Específicamente no se configuró la acción de daños y perjuicios por culpa *in contrahendo,* ya que no se probó que la conducta de los demandados fuera culposa, dolosa o fraudulenta. Veamos los hechos.

Del Informe Preliminar de Conferencia entre Abogados se desprende que la teoría de la parte demandante fue la siguiente:

> Que el demandante Milton Torres entró en la posesión de una propiedad (finca rústica) perteneciente a la co-demandada Nora Gracia. Luego de estar en la posesión le requirió a la co-demandada Nora Gracia que le vendiera dicha propiedad por la cantidad de $40,000.00 a lo cual ella aceptó vendérsela.

Dicha propiedad se encuentra localizada en el Barrio R[í]o Hondo de Mayag[ü]ez, Puerto Rico. El demandante Milton Torres se comprometió con la co-demandada Nora Gracia a pagarle la cantidad de $40,000.00 según él fuera vendiendo solares que él desarrollaría en dicho terreno. A[u]n luego de que el demandante Milton Torres realizara múltiples gestiones y trabajos en dicho terreno para segregarlo en solares, la co-demandada Nora Gracia le requirió que para venderle la propiedad en cuestión tendría que pagarle la cantidad de $50,000.00 en el momento.

Por su parte la demandada expuso la siguiente teoría:

La parte demandada cedió a la parte demandante el uso gratuito de un solar de su propiedad para que éste, que se encontraba seriamente lesionado, operara un depósito de arena y piedra para venta. Las partes de epígrafe iniciaron conversaciones encaminadas a la venta del solar al demandante, pero las condiciones impuesta por éste resultaron inaceptables y no se consumó la venta. Dicho solar fue vendido a un tercero.

El tribunal estimó probados los siguientes hechos:

El demandante MILTON TORRES, allá para el 9 de septiembre de 1979, entró en la posesión de una propiedad (finca rústica) perteneciente a la co-demandada NORA GRACIA, con el consentimiento de dicha propietaria con el propósito de establecer un negocio de venta de piedra y arena al detal. Dicha propiedad se encuentra localizada en el Barrio Río Hondo de Mayag[ü]ez, Puerto Rico, la cual colinda por el NORTE, con terrenos de Carlos Zapatero y Sucesión Torres, por el SUR, con terrenos de Efra[í]n García Torres, por el ESTE, con terrenos de José Bechara y por el OESTE, con Calle Barbosa del Barrio Río Hondo.

Luego de estar el demandante Milton Torres en la posesión realizó negociaciones con la co-demandada Nora Gracia, encaminadas a adquirir la propiedad por la suma de cuarenta mil dólares ($40,000.00), condicionando dicho pago a que el demandante realizara todas las gestiones necesarias en las agencias gubernamentales pertinentes para conseguir que se aprobar[a] un plano de segregación de varios solares y con

dicha venta el demandante pagaría los cuarenta mil dólares a la co-demandada.

Al entender el demandante la aceptación de lo pactado con la co-demandada Nora Gracia, procedió a contratar los servicios profesionales de ingenieros y agrimensores con el propósito de someter el plano de segregación a la Administración de Reglamentos y Permisos de Mayag[ü]ez, también realizó la compra de materiales tales como piedra, cascajo, mogolla y la contratación de equipo pesado con el propósito de acondicionar terreno, ya que éste era semi-llano e inundable y el rellenarlo era necesario para que se aprobara el plano de segregación. Los costos incurridos por este concepto ascendieron a la suma de $7,200.00.

Por ser necesaria la escritura de la propiedad para tramitar en la Administración de Reglamentos y Permisos la aprobación del plano de segregación, la misma le fue entregada por la co-demandada Nora Gracia al demandante Milton Torres.

Luego que el demandante Milton Torres realizó las mejoras necesarias encaminadas a que el plano de segregación fuera aprobado por la Administración de Reglamentos y Permisos de las cuales tenía conocimiento la co-demandada Nora Gracia, ésta le requirió a dicho demandante que si quería quedarse con la propiedad, tenía que pagarle cincuenta mil dólares en efectivo.

Como consecuencia de las discrepancias en el valor de la propiedad el demandante Milton Torres a través del Lcdo. Manuel Cruz Soto, le envió una carta a la co-demandada Nora Gracia de fecha 10 de febrero de 1981, la cual contestó dicha co-demandada a través del Lcdo. Luis Roberto Santos, donde le decía que la oferta de venta de la propiedad era por la cantidad de $50,000.00 y que dicha oferta se mantendría por treinta días.

La propiedad fue vendida por la co-demandada Nora Gracia según surge de la escritura número 17 otorgada en Mayag[ü]ez, Puerto Rico, ante la Notario Público Susan Báez Dixon, el día 22 de abril de 1981, por la cantidad de $25,000.00 a un tercero. No se le hizo oferta por esa cantidad de

$25,000.00 al demandante, a pesar de éste estar ocupando la propiedad de buena fe y con permiso de la dueña.

El demandante sufrió daños y perjuicios por la conducta negligente y dolosa de parte de la demandada.

Los daños y perjuicios sufridos por el demandante por la conducta negligente y dolosa de parte de la co-demandada Nora Gracia los valoramos en la suma de $25,000.00. Anejo A, págs. 2–5.

Según dichas determinaciones de hechos, el tribunal aplicó los principios del caso de *Prods. Tommy Muñiz* v. *COPAN*, ante, y concluyó que:

Era de conocimiento personal de las partes demandadas, que el Sr. Milton Torres realizaba gestiones encaminadas a que se le aprobara un plano de segregación en relación al terreno objeto de este pleito, ya que con ese propósito le facilitaron la escritura de dicho terreno; también era de conocimiento de las partes demandadas el hecho que el Sr. Milton Torres, realizara mejoras en dicho terreno debido a que fue un hecho estipulado por dichas partes; lo cual nos demuestra que el rompimiento de las negociaciones por parte de los demandados constituye un acto de mala fe, conducta culposa, dolosa y fraudulenta no encaminada a consumar un contrato y sí con el propósito de obtener beneficios de las mejoras realizadas con la venta de la propiedad objeto del presente litigio, a los señores Mario Velázquez y Margarita Sepúlveda por la cantidad de $25,000.00, según surge de la escritura otorgada por el Notario Público Susan Báez Dixon, de fecha 22 de abril de 1981, en Mayag[ü]ez, P.R. (Escritura Número 17); sin haberle hecho ofrecimiento alguno al demandante Milton Torres de la venta de la propiedad por la cantidad men[c]ionada y vendida a sabiendas que él tenía inter[é]s en la propiedad y que había realizado mejoras en la misma. Anejo A, págs. 8–9.

A los fines de evaluar el recurso de la parte demandada, ordenamos que se preparara y gestionara la aprobación de la Exposición Narrativa de la Prueba. Elevada y examinada ésta, expedimos auto de revisión. Revocamos.

Para resolver esta controversia es preciso aclarar que este es un caso sobre culpa *in contrahendo* bajo el supuesto de responsabilidad preliminar por retirada arbitraria del trato. Como señala Moreno Quesada, esta responsabilidad está incluida en el Art. 1802 (1.902 español) del Código Civil, en virtud de la doctrina recogida por la jurisprudencia de que en dicho precepto se recogen también los casos de perjuicios causados por el ejercicio abusivo de los derechos, en este caso, el desistimiento de los tratos. B. Moreno Quesada, *La Oferta del Contrato*, Barcelona, Colección Nereo, 1963, pág. 46. Esa es la posición que hemos adoptado, la cual ahora reiteramos. *Prods. Tommy Muñiz* v. *COPAN*, ante y *Vila & Hnos., Inc.* v. *Owen Ill. de P.R.*, ante.[1]

Bajo ese supuesto[2] nos atenemos a lo ya resuelto. Como expresáramos en *Prods. Tommy Muñiz* v. *COPAN*, ante, pág. 526, las negociaciones preliminares generan una relación de carácter social que impone a las partes el deber de comportarse de acuerdo a la buena fe. En *Prods. Tommy Muñiz* v. *COPAN,* ante, págs. 529–530, establecimos las siguientes guías:

---

[1] El que estemos ante este supuesto surge diáfanamente de la propia demanda, la teoría de la parte demandante, la prueba presentada y especialmente de la sentencia recurrida.

[2] Culpa *in contrahendo* ha sido definida y explicada de la siguiente manera:

"Puede ocurrir —como apunta Espín— que en la fase previa de aproximación de ambas voluntades, no se llegue a un acuerdo, y en estos casos en que no se llega al consentimiento contractual, pueden, sin embargo, haberse producido determinados gastos realizados en vista a la posible celebración del contrato, y originarse alguna responsabilidad para el que rompe los tratos iniciales sin causa justificada.

"Hay quienes sostienen que cuando uno entra en relación de negocios con otros para llegar a la conclusión de un contrato, en estos meros tratos que integran los preliminares de un contrato principal se injerta un pacto tácito de responsabilidad con el que se asume el riesgo de responder del daño que pueda causarle *in contrahendo*. Otro sector doctrinal entiende que el pacto de responsabilidad, forma parte integrante, sin más, del contrato inválido, de suerte

Las negociaciones que anteceden al contrato pueden ser de variada índole y, por tanto, la responsabilidad precontractual puede surgir en diferentes supuestos. Así, cuando la conducta de una de las partes es por su propia naturaleza culposa, dolosa o fraudulenta —como cuando uno de los contratantes oculta al otro su falta de capacidad para contratar— o se mantienen los tratos sin propósito de contratar, sólo para obtener información confidencial del negocio, o se inician los tratos, no con el propósito de realizarlos, sino de obtener

que a[u]n cuando éste deviene ineficaz, no lo es respecto al todo, sino a una parte, por cuanto queda en vigor, sobreviviéndole aquella parte que constituye el pacto de responsabilidad.

"Se ha objetado, que no se ve el porqué deba suponerse un acuerdo tácito con el expresado contenido por la sola razón de que el medio en que se causa el daño a otro es la proposición o conclusión de un contrato[,] y ello, por cuanto en realidad el daño a otro ocasionado mediante la formación iniciada o por la conclusión de un contrato, que después, respectivamente o no llega a producir efecto, se origina por la violación de la obligación genérica del *neminem laedere* y, por consiguiente, es un daño extracontractual.

"A nuestro entender —y según Adriano DE CUPIS (*op. cit.*, p. 168)— a quien sustancialmente seguimos en la exposición del presente epígrafe, se está en presencia de una relación obligacional (precedente a la que será establecida en el contrato) en cuanto [a]l vínculo jurídico referido liga a una parte y a otra por el hecho de haber principiado los tratos. La iniciación de los tratos es el hecho del que se deriva la obligación de una parte para la otra, de tener un comportamiento concorde a la buena fe.

"La doctrina de la culpa *in contrahendo* ha encontrado sanción legislativa, concretamente, en el Código alemán y en el vigente Código italiano. El nuestro, por el contrario, no aborda esta cuestión. En opinión de PEREZ GONZALEZ Y ALGUER, dicha doctrina de la culpa *in contrahendo* podría apoyarse en una generalización de los principios en que se inspiran los arts. 1.725 y 1.486 del CC. La S. 10 mar. 1949 (R. 269), parece exigir un acuerdo previo para la exigencia de dicha culpa.

"Sin embargo, se suele proclamar que, aunque el CC no regula la culpa *in contrahendo*, (habida cuenta la posibilidad de que se presenten en la práctica supuestos en que como consecuencia de negociaciones precontractuales una de las partes realice desembolsos a requerimiento de la otra con miras a la ulterior contratación sin que ésta llegue a perfeccionarse por conveniencias económicas de quien provocó los desembolsos) no hay inconveniente en que, al amparo de las normas de los arts. 1.258 y 1.902 del CC, se imponga a la parte que dio lugar a los desembolsos de la adversa la obligación de resarcir tales gastos." M.A. Del Arco Torres y M. Pons González, *Diccionario de Derecho Civil*, Pamplona, Ed. Aranzadi, 1984, T. I, pág. 404.

alguna ventaja para negociar con un tercero, o cuando por culpa de una de las partes el negocio celebrado resulte ineficaz. En fin, la amplia gama de supuestos sobre los que puede asentarse la responsabilidad precontractual hace necesario que en el análisis del problema se considere qué figura jurídica —culpa, dolo, fraude, buena fe, abuso del derecho u otros principios generales del derecho— responde más adecuadamente como fundamento jurídico para la solución del caso.

Debemos ahora determinar qué constituye el rompimiento injustificado o arbitrario de la negociación. Ya vimos que no hay obligación de culminar los tratos y, en consecuencia, el rompimiento por sí mismo no es suficiente para asentar la responsabilidad. Es preciso considerar las circunstancias del rompimiento, específicamente: (1) el desarrollo de las negociaciones, (2) cómo comenzaron, (3) el curso que siguieron, (4) la conducta de las partes durante su transcurso, (5) la etapa en que se produjo el rompimiento, y (6) las expectativas razonables de las partes en la conclusión del contrato, así como cualquier otra circunstancia pertinente conforme los hechos del caso sometidos a escrutinio judicial. (Escolio omitido.)

Veamos si la prueba establece la presencia de estos requisitos.

El demandante Milton Torres atestó que para 1979 convalecía de un accidente de tránsito y su prima hermana le cedió gratuitamente el uso del terreno para establecer un negocio de venta de arena y piedra. Para poder utilizar el solar para dicho propósito tuvo que rellenar y acondicionar el terreno, ya que estaba a cuatro o cinco pies bajo el nivel de la carretera y era inundable. Según su testimonio manifestó su interés en adquirir el solar de su prima. Acordó que el precio sería de $40,000 y que luego de realizar las mejoras y segregar le pagaría con el producto de la venta de los solares. La demandada le concedió dos años para

satisfacer el precio de la compraventa.(3) Alegó que contrató con César Peña para que con su equipo tipo *Loader* limpiara su parcela con una máquina tipo *digger* para efectuar trabajos en el solar. También presentó una factura de Roberto Morales por $4,200 para cubrir el depósito del relleno en el solar. (E.N.P., pág. 2.)(4) Su testimonio fue sumamente vago e impreciso sobre las gestiones que hiciera en A.R.P.E. para segregar los solares. A igual conclusión podemos llegar en cuanto a los supuestos trámites de venta con terceras personas. En la repregunta admitió que el alegado contrato con la demandada fue verbal y que durante el tiempo que poseyó el solar lo hizo libre de todo costo. También aceptó que durante ese período ella le pidió un dinero para el pronto pago, pero él carecía del dinero para comprar aunque lo podía conseguir. Luego testificó que su prima le requirió que le pagara el precio del solar en el momento de la compraventa, pero él le indicó que no le podía entregar los $40,000 en ese momento porque había invertido en una máquina y en arreglar los solares. (E.N.P., págs. 4–6.)

El Ing. Armengol Iglesias, testigo del demandante, atestó que hizo las gestiones ante A.R.P.E. y que no se consiguió el permiso para segregar porque no se pudo conseguir un acceso que dicha agencia exigía para aprobar el proyecto. (E.N.P., págs. 6–7.)

El Sr. César Velázquez compró el solar por $25,000 en efectivo meses después que el demandante lo entregó. Segregó cuatro solares de los cuales se vendieron dos y se quedó él con los otros para construir dos casas para él y

---

(3) No dice si era la totalidad o si antes tenía que hacer pagos parciales, según vendiera los terrenos.

(4) Es significativo que todas estas obras y gastos son compatibles con la explotación de su negocio de venta de arena y piedra, aunque también beneficiarían al terreno en sí.

su hermano. Invirtió $13,000 en mejoras para obtener el permiso de segregación. (E.N.P., págs. 7–8.)

Los otros testigos declararon sobre sus transacciones con el demandante para que éste preparara el terreno. Nada aportaron a la dilucidación de la controversia principal.(5)

El anterior resumen de la prueba del demandante demuestra que aun al darle entero crédito, no probó su caso. Aun bajo la premisa de que la demandada aceptó la oferta del demandante, éste no cumplió con sus compromisos. No tomó las medidas necesarias para cumplirlas. Nunca hizo gestiones efectivas para obtener los permisos de segregación, no acondicionó, no preparó el terreno en forma tal que fuera viable obtener dichos permisos y mucho menos venderlos; nunca tuvo la capacidad económica para financiar el proyecto, ni hizo gestión efectiva para ello; siguió explotando su negocio sin pagar rédito alguno por el uso del solar. Ni siquiera pudo probar en forma precisa cuáles fueron los gastos en que incurrió para tratar de completar su oferta.

A tenor con lo anterior, es forzoso concluir que la prueba del demandante no fue suficiente para cumplir con los requisitos jurisprudenciales. Especialmente concluimos que no se probó que el demandante tuviera unas expectativas razonables en la conclusión del contrato. En fin, nada hizo para cumplir su compromiso.

Nuestra conclusión de que no están presentes las circunstancias para responsabilizar a la parte demandada, bajo la doctrina de culpa *in contrahendo*, está sostenida, además, en la prueba de esta parte.

Rafael Mercado Rosas es el esposo de Nora Gracia. El matrimonio reside en San Juan, pero van frecuentemente

---

(5) Excepto el testigo Ing. Ángel Rivera Domenech, quien declaró que el propio Milton Torres le sugirió que le comprara el solar a Nora Gracia, pero que él decidió no comprarlo. Esto es claramente incompatible con la teoría del demandante.

a Mayagüez. Desde 1976 su esposa le dio permiso a unos contratistas para depositar relleno en su solar privativo. Después del accidente del demandante en 1978, ella le permitió usar el solar para operar el depósito de piedra y arena para la venta, sin cobrárle un solo centavo. Su esposa puso el solar en venta y Milton Torres manifestó interés en comprar, pero carecía de fondos con qué adquirir. De acuerdo a su testimonio, el demandante entró en conversaciones con ellos pero sin ningún compromiso. Posteriormente se le vendió la propiedad a César Velázquez porque necesitaban el dinero y éste les estableció que tendría que realizar mejoras, cuyo costo excedería de $20,000, para poder obtener la segregación. Había que rellenar, fijar postes para el servicio eléctrico, instalar servicio de agua y preparar las calles. Aunque accedieron verbalmente venderle al demandante en $40,000, éste no produjo el dinero. Son significativas las siguientes comunicaciones escritas que se intercambiaron las partes por conducto de sus abogados:

10 de febrero de 1981

Sra. Nora Gracia
Ave. Antonio Luciano #1222
Urb. El Comandante
Carolina, Puerto Rico 00630
Estimada señora:

Mi cliente, señor Milton Torres, ha solicitado mis servicios profesionales para realizar todas las gestiones necesarias para que se llegue a un acuerdo justo y razonable en torno a la adquisición de un predio de terreno ubicado en el Barrio Río Hondo de esta municipalidad.

En conformidad con la versión del señor Torres, hace algún tiempo ustedes acordaron verbalmente venderle a mi cliente el referido predio por un precio inicialmente por $40,000.00 y luego por $50,000.00.

Transcurrido el tiempo no se ha podido llegar a un acuerdo, por las razones que usted conoc[e], no obstante en conformidad al Artículo 1463 del Código Civil de Puerto Rico, 31 L.P.R.A.,

Sección 4010, nuestro cliente tiene derecho a que se le compense por las mejoras útiles realizadas por el arrendatario.

Según el señor Torres las referidas mejoras ascienden a $10,000.00.

Estamos en disposición de comprar el terreno por $40,000.00 [o] que se le pague al señor Torres la cantidad de $10,000.00.

Sin otro particular quedo

Cordialmente,

LIC. MANUEL CRUZ SOTO

Anejo I, pág. 32.

20 de febrero de 1981

Lcdo. Manuel Cruz Soto
Calle León #119 Altos
Mayag[ü]ez, Puerto Rico 00708

Re: Nora Gracia

Estimado compañero Cruz Soto:

Su carta de 10 de febrero de 1981 a doña Nora Gracia ha sido referida a esta oficina para su atención.

Lamento indicarle que no podemos asentir a lo que solicita usted en su carta, pues lo solicitado no tiene base en derecho.

Tengo a bien indicarle que nuestra representada se encuentra a[ú]n en disposición de venderle a don Milton Torres la parcela antes indicada bajo los mismos términos y condiciones previamente pactados; o sea $50,000.00. Esta oferta s[ó]lo se sostendrá por 30 días adicionales, pues de lo contrario tendría su cliente que abandonar la propiedad.

Sin ningún otro particular quedo,

Cordialmente,

LUIS ROBERTO SANTOS

Anejo J, pág. 33.

Ello demuestra que nunca hubo acuerdo de voluntades entre las partes. La señora Gracia fue clara en su testimonio. Aunque el demandante ofreció comprar, carecía de fondos. Por eso nunca se otorgó contrato de opción. Tampoco se le autorizó a hacer mejoras. Sólo se le permitió habilitar el solar para poder operar el negocio. El demandante jamás ofreció pagar un pronto. Sólo manifestó no tener dinero. Ella nunca aceptó que se le pagara con la venta y segregación de los solares efectuadas por su primo.

De lo anterior se desprende que los demandados nunca actuaron en forma negligente, dolosa o fraudulenta. No hay base alguna para concluir que actuaron de mala fe. Por el contrario, es el demandante el que pretendió aprovecharse económicamente de la situación creada por él.

■ Bajo la situación de hechos presentes en este caso, no resulta aplicable la doctrina de *Prods. Tommy Muñiz* v. *COPAN,* ante. Resolver a favor del demandante resultaría en extender la doctrina, que de por sí debe ser aplicada restrictivamente, en una forma desmesurada y contraria a los principios que la gobiernan. En síntesis, no podemos por fíat judicial crear una responsabilidad donde no la hay.

Para concluir, la prueba del demandante sobre los costos y gastos incurridos tampoco resulta convincente. No presentó suficiente prueba documental y la testifical fue vaga, general e imprecisa. Si incurrió en algunos gastos para acondicionar el terreno para la venta, éstos fueron mínimos. Lo que gastó fue principalmente para beneficio de su negocio, el que explotaba gratuitamente, debido a la relación familiar existente.

Por las razones antes expuestas, *se revocará la sentencia recurrida.*

El Juez Asociado Señor Negrón García concurre con el resultado sin opinión escrita.