# United States Court of Appeals
## For the First Circuit

No. 12-2007

ADVANCED FLEXIBLE CIRCUITS, INC.,

Plaintiff, Appellant,

v.

GE SENSING & INSPECTION TECHNOLOGIES GMBH; GE SENSING,
DIVISION OF CARIBE GE INTERNATIONAL OF PUERTO RICO, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Lipez, Circuit Judges.

Wilfredo A. Géigel, Sr., with whom Law Offices of Wilfredo A.
Géigel, was on brief, for appellant.
Michael D. Fisse, with whom Daigle, Fisse & Kessenich, PLC,
was on brief, for appellees.

March 20, 2015

**TORRUELLA, Circuit Judge.** This case stems from the termination of precontractual negotiations between two corporations. Plaintiff-Appellant, Advanced Flexible Circuits ("AFC"), entered into negotiations with Defendants-Appellees, GE Sensing & Inspection Technologies GmbH and GE Sensing, Division of Caribe GE International of Puerto Rico, Inc. (collectively, "GE"), for AFC to manufacture and supply thermal filaments for GE to use in its production of cardiac catheters. After about two years of negotiations between the parties, but prior to the execution of a contract, GE terminated negotiations with AFC. AFC subsequently filed suit against GE in the United States District Court for the District of Puerto Rico, alleging that GE was liable for precontractual damages under the Puerto Rico doctrine of culpa in contrahendo for arbitrarily and unjustifiably withdrawing from contractual negotiations with AFC.[1] Both parties filed cross-motions for summary judgment; the district court denied AFC's motion and granted GE's motion, thus dismissing AFC's claims against GE.

AFC now appeals that decision, arguing that the district court erred in finding that there was no genuine dispute as to any material facts regarding the culpa in contrahendo claim. AFC

---

[1] Under Puerto Rico law, the tort-law doctrine of culpa in contrahendo "requires parties to negotiate in good faith." Ysiem Corp. v. Commercial Net Lease Realty, Inc., 328 F.3d 20, 23-24 (1st Cir. 2003).

further contends that the district court abused its discretion in sanctioning AFC for its alleged failure to comply with the district court's "anti-ferret rule," Local Rule 56, in its opposition to GE's motion for summary judgment. See D.P.R. Civ. R. 56.[2] GE responds by asserting that: (1) GE was justified in withdrawing from negotiations due to AFC's failure to produce satisfactory samples of the filaments; (2) AFC thus could not have had a reasonable expectation of finalizing a contract with GE; (3) in the alternative, AFC's alleged damages are not recoverable under culpa in contrahendo or are otherwise unsupported by the evidence; and (4) the district court properly applied its anti-ferret rules in sanctioning AFC for its failure to comply with Local Rule 56.

After reviewing the record and the parties' filings, we conclude that AFC has offered no competent evidence permitting a finding of liability on its culpa in contrahendo claim. The two parties engaged in precontractual negotiations, and after the initial sample units supplied by AFC failed multiple quality and performance tests, GE ultimately withdrew from negotiations. Other

---

[2]  AFC nominally raises a third issue, "[w]hether the [district court] erred in finding that plaintiff/appellant had not met the standard for granting of summary judgment in its favor." However, this formulation is misleading. Rather than setting out a distinct issue, the corresponding section of AFC's brief merely continues to argue that the district court should not have granted GE's motion for summary judgment and should not have sanctioned AFC under Local Rule 56. In so doing, AFC does not argue that its own cross-motion for summary judgment should have been granted, but instead argues that "it would have been more appropriate . . . to deny both sides' motions and let the jury decide."

than speculative, conclusory allegations, AFC has offered no evidence that GE's termination of those negotiations was arbitrary, unjustified, or otherwise wrongful. Accordingly, we affirm the district court's grant of summary judgment in favor of Defendants-Appellees. Secondly, we conclude that the district court did not abuse its discretion in sanctioning AFC for failing to comply with the court's local rules.

## I. Background

We begin with an overview of the factual background, drawn from the summary judgment record and viewed in the light most favorable to Plaintiff-Appellant AFC. See Tobin v. Fed. Express Corp., 775 F.3d 448, 449 (1st Cir. 2014).

### A. The Negotiations

GE is in the business of manufacturing and assembling various products, including component parts of medical catheter devices, which are assembled at a facility in Añasco, Puerto Rico ("Añasco Facility"), and then distributed to its customers. One of the pieces of a medical catheter component part assembled at the Añasco Facility is a "thermal filament" (otherwise known as a "heater filament"). GE purchases these heater filaments from suppliers before incorporating them into the assembled catheter components which it then, in turn, sells to its customers.

AFC is a Minnesota corporation. During the negotiations between GE and AFC, AFC had one employee: Theresa Bailey, who

served as AFC's president, secretary, and treasurer.  In the summer of 2006, Manuel Hidalgo, a sales representative for an organization called "Yes America," approached Maritza Cedó, the Material Leader for GE at the Añasco Facility.  Hidalgo told Cedó that he was a sales agent for a company, AFC, that was capable of engineering and manufacturing the heater filament used in the catheter component assembled by GE at the Añasco Facility; Hidalgo proposed to Cedó that AFC could supply the heater filament for GE.  Cedó told Hidalgo that GE currently purchased the heater filaments from another supplier, that GE had incomplete information about the filament, and that GE did not know how to manufacture the filament itself.

Hidalgo informed Cedó that AFC: (1) was experienced in manufacturing heater filaments; (2) had expertise in the engineering and manufacturing of heater filaments; and (3) was capable of determining, without further information, how the heater filament manufactured by GE's then-current supplier was engineered and constructed.  Cedó explained to Hidalgo that AFC would have to submit samples of the heater filaments to GE for quality testing. Cedó further explained that the decision to purchase the filaments was contingent upon the samples passing GE's quality tests.  If AFC's sample heater filaments passed the quality inspection and tests by GE, then AFC's filaments could be approved for supply.  GE did not provide specific technical specifications, schematics, or

engineering drawings to AFC, but rather gave AFC two physical samples of the heater filament it needed.

AFC and GE began negotiations on a "proposed contract" in January of 2007, and the negotiations continued for two years. AFC acknowledges that the negotiations from 2007 until March of 2009 "comprise[d] the technical period," during which information was exchanged and tests were conducted, and that if either party withdrew during this period, there would be no repercussions.

In 2009, Ulrich Angeli, the Senior Manager and Global Commodity Leader for GE, became personally involved in negotiations with Bailey regarding AFC's proposed supply of the heater filaments. During the spring and summer of 2009, the two parties exchanged drafts of a purchase agreement. They negotiated via email regarding the terms of the agreement, including the duration of the contract, the applicable law that would govern the agreement, and the price per unit. Angeli informed Bailey that AFC would need to produce sample heater filaments that could pass the requisite quality tests before the final contract terms could be settled.

According to GE, AFC submitted a total of four groups of sample heater filaments during the two years of negotiation, and all of them failed quality testing "because they did not satisfy the specified dimensional, mechanical, or electrical parameters that were required before the heater filaments could be used in

medical catheter devices."  AFC, for its part, maintains that the delays and test failures were not the result of AFC's shortcomings or improper manufacturing but rather "were due to improper, wrong and misguided information provided by GE."

On June 25, 2009, before the testing of the fourth and final group of sample elements, AFC sent GE two signed copies of a negotiated purchase agreement between the two companies; GE never executed this contract.  The fourth and final sample was rejected by GE in August 2009 due to problems with its dimensions, among other reasons.  By September 2009, GE had withdrawn from the negotiations.

On September 21, 2009, after the negotiations between AFC and GE had been terminated by GE, Bailey sent an e-mail to Angeli with a final invoice of $183,232.00 for "the development costs and total hours spent by all the participants in the supply chain who contributed to the development and successful outcome of this project."  In the same e-mail, Bailey also mentioned that AFC thought the "project was near the production phase," and that AFC had tried to get in contact with GE to find out "why the project was abruptly cancelled."  GE refused to pay, and AFC subsequently filed this lawsuit.

## B.  Procedural Background

On January 29, 2010, AFC filed suit against GE in the district court, claiming that GE had wrongfully withdrawn from

contractual negotiations with AFC. On that basis, under the doctrine of culpa in contrahendo, AFC sought recovery of precontractual damages allegedly incurred by AFC during its attempts to manufacture the heater filaments to supply to GE.

After discovery, GE filed a motion for summary judgment to dismiss AFC's claim because AFC had failed to produce any evidence in support of its culpa in contrahendo claim. In the alternative, GE also moved for partial summary judgment to dismiss AFC's claims for the following damages "not recoverable under a culpa in contrahendo claim: (1) damages allegedly incurred by parties other than AFC; (2) 'hourly' charges of third parties and unsupported by evidence; and (3) incidental and consequential damages." In response to GE, AFC filed its own motion for partial summary judgment; this motion was denied (without prejudice) because AFC failed to comply with the relevant rules, but the district court allowed AFC to file a renewed motion for partial summary judgment.

In ruling on these motions, the district court determined that AFC's counterstatement of material facts in opposition to GE's motion for summary judgment failed to comply with Local Rule 56 for two reasons. First, the district court stated that AFC had failed to properly controvert the statement of undisputed facts supporting GE's motion for summary judgment, because AFC's opposing statement "d[id] not admit, deny, or qualify any fact, nor d[id] it use the

-8-

words admit, deny or qualify or any synonym thereof to describe its stance regarding each fact." The district court noted that it did not know whether AFC's "disputed" facts were meant to deny or qualify GE's statement of undisputed facts.

Second, the district court held that, regardless of whether AFC meant to deny or qualify given facts, AFC violated Local Rule 56 by "fail[ing] to provide any required record references in its opposing statement of material facts." Consequently, the district court "only consider[ed] those parts of AFC's opposition to GE Sensing's statement of uncontested facts that compl[ied] with Local Rule 56 -- i.e., the facts deemed admitted." However, the district court explicitly stated that, in ruling on GE's motion for summary judgment, the court considered AFC's statement of facts that accompanied its own cross-motion for partial summary judgment.

Evaluating the merits of the competing summary judgment motions, the district court held that GE did not violate the doctrine of culpa in contrahendo. The court reasoned that the evidence did not establish that GE had failed to act in good faith or was unjustified in withdrawing from the contractual negotiations with AFC. Furthermore, the evidence did not show that AFC could have had a reasonable expectation of entering into a contract with GE, because AFC admitted that it never provided a sample group of heater filaments that passed GE's quality testing. In rejecting

AFC's argument that GE did not negotiate in good faith, the district court highlighted that AFC was aware that GE "did not manufacture the heater filament, did not know how to manufacture the heater filament, and did not have all the information regarding the heater filament." Therefore, AFC could not have reasonably expected GE to have provided them with exact specifications for the heater filament. The district court further emphasized that AFC was at fault for failing to provide heater filaments that met quality standards, as GE relied on AFC's representation that it was an experienced expert in engineering and manufacturing quality heater filaments.

Dismissing AFC's contention that it reasonably expected the contract to be completed, the district court found that the evidence showed that AFC knew it had to produce a sample group of heater filaments that met all the relevant quality standards before an agreement could be reached, and AFC never produced a sample group that passed the quality testing and validation process. Accordingly, the district court granted summary judgment in favor of GE, dismissed AFC's culpa in contrahendo claims, and denied AFC's renewed motion for summary judgment. The district court did not address GE's alternative motion for partial summary judgment, as that motion was thus moot.

With the foregoing background in mind, we examine the principal issue presented in this appeal: whether the district

court, in granting summary judgment in favor of GE, correctly concluded that there was no genuine dispute regarding facts material to whether GE is liable to AFC under a theory of <u>culpa in contrahendo</u>.

## II. <u>Summary Judgment on AFC's Culpa in Contrahendo Claim</u>

We review the district court's decision to grant summary judgment <u>de novo</u>, viewing the facts in the light most favorable to AFC, the non-movant. <u>See</u> <u>Klunder</u> v. <u>Brown Univ.</u>, 778 F.3d 24, 30 (1st Cir. 2015). Summary judgment is properly granted when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(a). We are not to make "credibility determinations or weigh the evidence" in determining whether summary judgment should be granted. <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

In order to defeat a motion for summary judgment, the nonmovant may not rest upon some combination of conclusory allegations, improbable inferences, and unsupported speculation, but must instead present definite, competent evidence to rebut the motion. <u>See</u> <u>Ahern</u> v. <u>Shinseki</u>, 629 F.3d 49, 54 (1st Cir. 2010); <u>Maldonado-Denis</u> v. <u>Castillo-Rodríguez</u>, 23 F.3d 576, 581-83 (1st Cir. 1994).

Parties involved in contract negotiations are generally "free to contract or to withdraw as it best suits their interests."

Producciones Tommy Muñiz, Inc. v. COPAN, 113 P.R. Dec. 517, 526, 13 P.R. Offic. Trans. 664, 676 (P.R. 1982) ("COPAN").  However, under the Puerto Rico doctrine of culpa in contrahendo, "precontractual negotiations trigger a social relationship which imposes on the parties the duty to act in good faith."  Torres v. Gracía, 119 P.R. Dec. 698, 703 (P.R. 1987).[3]

"Under this doctrine, negotiations toward an agreement can -- even without a letter of intent -- readily give rise to mutual expectations that the parties will bargain in good faith and refrain from misconduct."  Ysiem Corp. v. Commercial Net Lease Realty, Inc., 328 F.3d 20, 24 (1st Cir. 2003).  The doctrine "is designed primarily to protect reliance rather than expectation interests."  Id.; see also Velázquez Casillas v. Forest Labs., Inc., 90 F. Supp. 2d 161, 166 (D.P.R. 2000) (observing that culpa in contrahendo is generally "used to compensate a party for the expenses it incurred in reliance on the other party's offer to form a contract when the contract negotiations break down" (citing

---

[3]  Culpa in contrahendo is a claim sounding in tort, not in contract.  See Ysiem, 328 F.3d at 24; Shelley v. Trafalgar House Pub. Co., 987 F. Supp. 84, 86 (D.P.R. 1997) ("characteriz[ing] the culpa in contrahendo action as a legal action in torts"); COPAN, 13 P.R. Offic. Trans. at 679 (explaining that the doctrine arises from Article 1802 of the Civil Code, which imposes extracontractual liability for acting in a tortious or wrongful manner during preliminary negotiations).  The two leading cases from the Supreme Court of Puerto Rico examining the culpa in contrahendo doctrine are COPAN, 13 P.R. Offic. Trans. 664, and Colón v. Glamorous Nails, 167 P.R. Dec. 33 (P.R. 2006).

<u>Snyder</u> v. <u>Champion Realty Corp.</u>, 631 F.2d 1253, 1255-56 (5th Cir. 1980))).

A party's withdrawal from contractual negotiations may be considered to be a violation of the duty of good faith if: (1) the withdrawal was arbitrary or without justification; and (2) the other party had a reasonable expectation that a contractual agreement would be consummated. <u>See</u>, <u>e.g.</u>, <u>COPAN</u>, 13 P.R. Offic. Trans. at 678-79; <u>see also</u> <u>WHTV Broad. Corp.</u> v. <u>Centennial Commc'ns Corp.</u>, 460 F. Supp. 2d 297, 306 (D.P.R. 2006) (stating that the doctrine of <u>culpa in contrahendo</u> allows for precontractual liability of a party who "fails to negotiate in good faith when the other party had reasonable expectations that an agreement would finally be reached among the parties" (citing <u>Glamorous Nails</u>, 167 P.R. Dec. at 45-47)).

To determine liability under <u>culpa in contrahendo</u>, courts have evaluated the circumstances of the withdrawal from negotiations by considering certain factors, including:

> (1) the development of the negotiations, (2) how did [the negotiations] begin, (3) their course, (4) the conduct of the parties throughout [the negotiations], (5) the stage at which the interruption took place, [and] (6) the parties' reasonable expectations to form a contract, as well as any other relevant circumstance under the facts of the case . . . .

<u>Torres</u>, 19 P.R. Offic. Trans. at 749. Accordingly, applying the doctrine involves a context-dependent and fact-intensive inquiry.

-13-

We have previously noted that "[t]he culpa in contrahendo test is not very precise and the courts appear reasonably cautious in applying a doctrine that could, if applied too freely, chill negotiations rather than facilitate them." Ysiem, 328 F.3d at 24. Importantly, the doctrine of culpa in contrahendo "should be applied restrictively." Velázquez Casillas, 90 F. Supp. 2d at 167 (citing Torres, 19 P.R. Offic. Trans. at 754).

The mere "breaking off of negotiations is not sufficient in and of itself to create liability," id., but rather it is the "unjustified withdrawal or termination of precontractual negotiations" that results in liability. See Satellite Broad. Cable, Inc. v. Telefónica de España, S.A., 807 F. Supp. 218, 219 (D.P.R. 1992) (emphasis added). Thus, "[a] negotiating party may incur culpa in contrahendo liability if its conduct is wrongful, fraudulent, or dolose." Velázquez Casillas, 90 F. Supp. 2d at 167; see also WHTV, 460 F. Supp. 2d at 306 ("[I]n order to impose liability under this doctrine, there must be a finding of bad faith or fault on the part of the party who terminated the negotiations." (citing COPAN, 13 P.R. Offic. Trans. at 678)); Torres, 19 P.R. Offic. Trans. at 744 ("[T]he action for damages based on culpa in contrahendo was not established since it was not proved that the defendants' conduct was wrongful, deceitful or fraudulent.").

This "doctrine applies even if the Defendant's conduct was not intentional, but merely negligent." WHTV, 460 F. Supp. 2d

-14-

at 306; see also Glamorous Nails, 167 P.R. Dec. at 46 (stating that the Supreme Court of Puerto Rico "has acknowledged culpa in contrahendo not only when one of the parties participating in the formation of a contract acts intentionally through dolus [deceit], fraud or abuse of rights, but also when that party causes harm by acting negligently").[4]  Indeed, the Supreme Court of Puerto Rico has observed that "the wide spectrum of grounds upon which precontractual liability may rest" include "fault, dolus, fraud, good faith, abuse of law, or other general principle[s] of law." COPAN, 13 P.R. Offic. Trans. at 679.  Examples of wrongful conduct that can give rise to culpa in contrahendo liability include the following:

> a party's failure to disclose its lack of legal capacity to enter into a contract; a party's negotiating without any intent of entering into a contract but with the intent of obtaining confidential business information from the other side; a party's using the negotiations not in order to finalize an agreement but to obtain some advantage in its dealings with a third party; or a party's fault causing the business transaction to be ineffective.

Velázquez Casillas, 90 F. Supp. 2d at 167 (citing COPAN, 13 P.R. Offic. Trans. at 679).

---

[4]  "Dolus or dolo is a form of contractual deceit that can serve to invalidate consent to an otherwise valid contract or compromise." Citibank Global Markets, Inc. v. Rodríquez Santana, 573 F.3d 17, 29 (1st Cir. 2009) (citing P.R. Laws. Ann. tit. 31, § 4828).

-15-

Here, AFC has failed to present definite, competent evidence showing such wrongful conduct on behalf of GE. AFC has not presented specific facts suggesting that GE's conduct in the negotiations was "wrongful, fraudulent, or dolose." See id.; see also Ahern, 629 F.3d at 54 (stating that where nonmovants bear the burden of proof on an issue, they must point to specific facts to defeat summary judgment, and they cannot "rely[] upon conclusory allegations, improbable inferences, acrimonious invective, or rank speculation"). To the contrary, AFC has either admitted or failed to contest facts that show that GE had valid reasons for withdrawing from negotiations and for choosing not to execute a contract with AFC.

AFC explicitly admitted that it represented to GE that it was capable of engineering and manufacturing quality heater filaments. AFC further represented that it had experience with the manufacture of the same type of heater filaments sought by GE, and it conceded that GE relied on these representations of expertise. AFC also admitted that, under the agreement contemplated by the parties, it had to first produce "sample" filaments for "inspection and testing evaluation." Only if the samples passed this process could the filaments then be approved for later supply in quantities required by GE.

Additionally, AFC conceded that the first sample "failed the test" because it was not a heater filament, although AFC

-16-

maintains that this failure was because GE had not provided the required specifications. Furthermore, AFC "was still having difficulties" manufacturing sample filaments as of March 2, 2009, and June 24, 2009.

AFC also failed to contest certain other facts alleged by GE.[5] Accordingly, as relevant here, the following additional facts are not in dispute. First, it took AFC a period of more than two years to produce multiple filament samples, including a delay of one year to determine the correct material to use. Four different lots of sample components were provided from 2008 to 2009, and at least three of those lots failed qualification testing.[6] Although AFC alleges that these failures "were due to improper, wrong and misguided information provided by GE," there is no dispute that three of the four sample lots provided by AFC failed GE's quality tests -- including the fourth and final sample lot. Regarding the

_____

[5]  The district court considered whether facts contained in AFC's statement of facts in support of its own cross-motion for summary judgment contradicted any of the facts asserted by GE. See, e.g., Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1137 (9th Cir. 2001) (holding that when a court disregards a party's motion in opposition to summary judgment for failure to comply with a local rule, the court still has a duty "to review the evidence properly submitted in support of cross-motions for summary judgment to determine whether that evidence demonstrates a genuine issue of material fact"); see also P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 133 (1st Cir. 2010) (stating that when "cross-motions for summary judgment are filed simultaneously, or nearly so, the district court ordinarily should consider the two motions at the same time").

[6]  GE maintains that all four sample lots failed the qualification testing.

first two of the four sample lots, AFC has further admitted that it was reasonable for GE to reject the samples due to their poor quality.[7]  Moreover, AFC has presented no evidence nor argument showing that GE was obligated or expected to enter into a contract with AFC if just some of the samples passed the quality testing.

Additionally, in August 2009, following the testing failure of the fourth lot of sample filaments, AFC was planning to advise GE that unless different arrangements were made -- including GE paying AFC for the production of additional samples -- AFC would not go forward with the project.  For its part, GE's decision to withdraw from negotiations with AFC was based primarily on AFC's multiple failed attempts to produce quality samples, but also other factors such as: AFC's delays in production, its failure to participate in weekly status meetings, and its reliance on third parties for production.  On the basis of the foregoing, the summary judgment record contains evidence of undisputed facts showing that GE's withdrawal from negotiations was justified and was not arbitrary or otherwise wrongful.  See WHTV, 460 F. Supp. 2d at 306 (observing that the mere withdrawal from precontractual negotiations does not -- in and of itself -- give rise to liability under culpa in contrahendo); see also Satellite Broad. Cable, Inc.,

---

[7]  Even in AFC's (properly disregarded and stricken) opposition to GE's motion for summary judgment, AFC only disputed this fact to the extent that "the rejection was not due to improper manufacturing but to improper, wrong and misguided information provided by GE."

807 F. Supp. at 219 (establishing that it is only the unjustified termination of precontractual negotiations that results in liability under the doctrine). By contrast, AFC failed to properly point the court to any evidence in the summary judgment record showing wrongful conduct on behalf of GE. See WHTV, 460 F. Supp. 2d at 306 (citing COPAN, 113 P.R. Dec. at 529).[8]

AFC argues that GE was also engaging in negotiations with an alternative supplier: a Chinese company that offered better pricing. However, AFC failed to properly support this argument with a citation to a specific place in the record. Moreover, even assuming that GE was indeed negotiating with another supplier, AFC has put forth no evidence -- and indeed, has not even made a specific allegation -- showing why such conduct would be wrongful under these circumstances. Nor has AFC provided us with legal authority establishing that engaging in simultaneous precontractual

---

[8] Given that the application of culpa in contrahendo depends heavily on the facts and context of each case, we do not opine here on the types of conduct that would be either necessary or sufficient to establish liability in every hypothetical case. We nonetheless note that AFC has failed to adduce any evidence that might suggest wrongful conduct on behalf of GE. Aside from unsupported, conclusory allegations, AFC has submitted no evidence showing, for example: that GE never had any intention of executing a contract; that GE undertook the negotiations with the sole intent of obtaining confidential business information from AFC; that GE used the negotiations not in order to finalize an agreement but only to obtain some advantage in its dealings with a third party; or that GE was at fault in causing the business transaction to be ineffective. See Velázquez Casillas, 90 F. Supp. 2d at 167 (citing COPAN, 13 P.R. Offic. Trans. at 679) (listing these as examples of wrongful conduct potentially giving rise to precontractual liability).

negotiations with two alternative suppliers is wrongful.  There is nothing inherently nefarious about engaging in simultaneous negotiations with competing suppliers.  Surely many businesses must do so regularly.  Aside from vague, unsupported allegations and speculation, AFC failed to present any evidence of conduct by GE that was "wrongful, fraudulent, or dolose."  <u>See</u> <u>Velázquez Casillas</u>, 90 F. Supp. 2d at 167; <u>see also</u> <u>Ahern</u>, 629 F.3d at 54; <u>Maldonado-Denis</u>, 23 F.3d at 581.

AFC further argues that GE was at "fault" in "causing the business transaction to be ineffective," because GE failed to provide the necessary technical information to AFC.  <u>See</u> <u>Velázquez Casillas</u>, 90 F. Supp. 2d at 167 (citing <u>COPAN</u>, 13 P.R. Offic. Trans. at 679).  This argument fails for at least two reasons.  First, AFC has not provided us any legal authority establishing that such a failure, without more, would give rise to <u>culpa in contrahendo</u> liability.  Second, the undisputed evidence regarding the technical specifications shows that neither GE nor AFC knew how to manufacture the heating filaments, that AFC was aware of GE's lack of knowledge, that AFC held itself out as an expert capable of reverse-engineering the filaments, and that GE did not falsely represent to AFC that it would provide the necessary technical blueprints.  In light of this evidence, it is clear that GE was not at fault, nor did it cause the transaction to be ineffective.

Rather than citing "definite, competent" record evidence that shows specific facts establishing a genuine dispute as to any wrongful conduct by GE, AFC has instead relied upon a combination of conclusory allegations, improbable inferences, and unsupported speculations. See Ahern, 629 F.3d at 54; Maldonado-Denis, 23 F.3d at 581-83. Given the foregoing, AFC has failed to effectively rebut the evidence and arguments presented by GE in its motion for summary judgment. On the basis of the undisputed facts, GE was entitled to judgment as a matter of law, and its motion was properly granted.

### III. Local Rule 56

AFC further argues that the district court abused its discretion in applying the court's anti-ferret rule under Local Rule 56 to disregard AFC's counterstatement of facts in its opposition to GE's motion for summary judgment. Rejecting this argument, we find no such abuse of discretion.

Local Rule 56 "requires a party moving for summary judgment to submit a 'separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact.'" P.R. Am. Ins. Co., 603 F.3d at 130 (quoting D.P.R. Civ. R. 56(b)). "Each fact must be supported by a citation to a specific paragraph or page of the summary judgment record." Id. (citing D.P.R. Civ. R. 56(e)). A party opposing a motion for summary judgment must

submit a statement countering the movant's statement of undisputed facts; this counter-statement "'shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation.'" Id. at 131 (quoting D.P.R. Civ. R. 56(c)). "Properly supported facts contained in a[] [statement of undisputed facts] shall be deemed admitted unless controverted in the manner prescribed by the local rule." Id. (citing D.P.R. Civ. R. 56(e)).

Anti-ferret rules are intended to reduce the burden on trial courts and "prevent parties from unfairly shifting the burdens of litigation to the court." Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir. 2007). When the nonmovant fails to comply with the standards of Local Rule 56, "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." Id. at 7. In such a situation, "the district court must still apply the standard articulated in Federal Rule of Civil Procedure 56." P.R. Am. Ins. Co., 603 F.3d at 130. We then review the district court's order applying Local Rule 56 for an abuse of discretion, giving a "special degree of deference" to the district court's interpretation of its own local rules. Id.

At the outset, we note that this issue is moot with respect to many, if not all, of the facts proposed by AFC in its

-22-

opposition to GE's motion for summary judgment, because the district court actually considered those same proposed facts. Indeed, in ruling on both parties' cross-motions for summary judgment, the district court explicitly stated that it considered the statement of facts in AFC's own motion for partial summary judgment, and there was significant overlap between AFC's two statements of facts (one of which was disregarded, and the other of which was duly considered). Thus, although the court stated that it would disregard portions of AFC's opposing statement of material facts, it nonetheless considered those same facts as they were presented in AFC's own motion for summary judgment. Arguably, the district court considered most, if not all, of the facts that AFC now complains were erroneously stricken. AFC has failed on appeal to point us to a single fact that was actually not considered by the district court and that would be material to a question necessary for the resolution of this matter.

Reviewing the record and the parties' submissions, and giving a "special degree of deference" to the district court's interpretation of its own rules, we find no abuse of discretion in the district court's application of Local Rule 56. See P.R. Am. Ins. Co., 603 F.3d at 130. Therefore, we find AFC's arguments regarding the district court's application of Local Rule 56 to be unavailing.

## IV.  Conclusion

For the foregoing reasons, we conclude that AFC has presented no competent evidence showing a genuine issue of material fact as to any wrongful conduct on the part of GE in negotiating. It was neither "arbitrary" nor "unjustified" for GE to withdraw from precontractual negotiations after the sample parts provided by AFC failed multiple quality evaluations and tests.  Furthermore, the district court did not abuse its discretion in sanctioning AFC for failing to comply with the court's local rules.  Accordingly, summary judgment in favor of Defendants-Appellees was proper, and the district court's decision is affirmed.

**AFFIRMED**.