# United States Court of Appeals
## For the First Circuit

No. 14-2144

WILLIAM COSSART,

Plaintiff, Appellant,

v.

UNITED EXCEL CORPORATION and KY HORNBAKER,

Defendants, Appellees.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]


Before

Thompson, Kayatta, and Barron,
Circuit Judges.


Kevin T. Smith, with whom Law Office of Kevin T. Smith LLC
was on brief, for appellant.
Marissa I. Delinks, with whom Hinshaw & Culbertson LLP was on
brief, for appellees.


September 30, 2015

**BARRON**, **Circuit Judge**.  This case presents a question about the limits of personal jurisdiction.  The issue arises in connection with a lawsuit brought in Massachusetts concerning an alleged breach of an employment contract.  The contract contemplated that the employee would work from Massachusetts for a Kansas company, which then facilitated the employee's work from Massachusetts by, among other things, providing him with equipment and officially registering a sales office with the Commonwealth.  The employee sued after the company failed to pay him a commission that he alleges he was due.  Under the facts presented, we conclude that the assertion of jurisdiction over the company and its president is consistent with both the Massachusetts long-arm statute and the Due Process Clause.  We therefore reverse the District Court's dismissal for lack of personal jurisdiction and remand for further proceedings.

**I.**

United Excel Corporation, the employer and one of the two defendant-appellees, is a so-called "design/build" company that provides architectural and construction management services to hospitals.[1]  It is incorporated and headquartered in Kansas.

---

[1] The recited facts are drawn from the complaint, plaintiff's evidentiary submissions, and, when uncontradicted, defendants' affidavits.  See C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014).

William Cossart, the plaintiff-appellant, worked for the company as a salesman. He resides in Wayland, Massachusetts.

United Excel recruited Cossart in 2010. At that time, Cossart traveled from his home in Massachusetts to United Excel's offices in Kansas. There, he negotiated an employment contract with, among others, Ky Hornbaker, United Excel's president and the other defendant in this case.

That first employment contract assumed that Cossart would continue to work out of his home in Wayland, Massachusetts. United Excel memorialized the contract in a letter addressed to Cossart in Wayland. The letter stated that United Excel would provide Cossart with the business equipment that he would need to work from Wayland, such as a computer, a printer, a cell phone, and video conference equipment. United Excel also provided Cossart with a business telephone number with a Kansas exchange and redirected calls made to that number to Cossart's phone in Wayland. And United Excel, acting through Hornbaker, registered with Massachusetts to establish a "[g]eneral contracting sales office" in the state just a day after Cossart started his new job with United Excel in Wayland.

In 2012, United Excel and Cossart changed Cossart's employment contract to make him a "commission only employee," while leaving the other terms of his employment unaltered. United Excel once again memorialized the employment contract in a letter sent

- 3 -

to Cossart at his Wayland address.  And the new agreement, like the old, allowed Cossart to use home office equipment provided by United Excel to facilitate his remote employment.  United Excel also continued to keep its registration up to date in Massachusetts.

Over the course of his employment, Cossart made hundreds of telephone calls and sent hundreds of e-mails on behalf of United Excel from his Wayland office.  He had numerous meetings and made cold calls in an effort to solicit business from various hospitals in Massachusetts, but he did not successfully secure business with a Massachusetts client.

An attempt to secure an out-of-state client, however, led to the present action.  In October 2013, Cossart, working from Massachusetts and under the second employment contract, identified a potential deal in which United Excel would be retained by a hospital in California.  Cossart then contacted the California hospital from his home in Wayland "numerous" times by phone and e-mail in the course of trying to secure that deal.  Cossart also traveled from Massachusetts to California for "several" in-person meetings.

When execution of the contract for the work for the California hospital was "imminent," Cossart contacted Hornbaker to discuss Cossart's belief that United Excel would owe him a $219,000 commission under the second employment contract for his work in

- 4 -

securing the deal with the California hospital. Hornbaker responded by phone and e-mail that he would not consummate the California deal unless Cossart agreed to accept a commission of only $62,000.

When Cossart refused to accept the lower commission, United Excel rescinded its offer on the California contract, and Hornbaker fired Cossart. Cossart then brought this action in a Massachusetts state court against United Excel and Hornbaker. The complaint alleged that the defendants violated the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148,[2] by refusing to pay Cossart the compensation owed to him under the second employment contract for his efforts to secure the deal with the California hospital.

The defendants removed the case to federal district court on the basis of diversity jurisdiction and then moved to dismiss for lack of personal jurisdiction over both United Excel and Hornbaker. The District Court granted the motion, and Cossart now appeals.

---

[2] The Wage Act requires employers to "pay . . . [their] employee[s] the wages earned" -- including "commissions when the amount of such commissions . . . has been definitely determined and has become due and payable to such employee" -- within a certain time period. Mass. Gen. Laws ch. 149, § 148. The Act also expressly subjects certain corporate officers -- including "the president and treasurer" -- to individual liability when their employer is sued under the Act. Cook v. Patient Educ., LLC, 989 N.E.2d 847, 851 (Mass. 2013) (quoting Mass. Gen. Laws ch. 149, § 148).

## II.

"Where, as here, a district court dismisses a case for lack of personal jurisdiction based on the prima facie record, rather than after an evidentiary hearing or factual findings, our review is de novo." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014). In undertaking that review, "we take the plaintiff's evidentiary proffers as true and construe them in the light most favorable to the plaintiff's claim, and we also consider uncontradicted facts proffered by the defendant." Id. As the plaintiff, Cossart "bears the burden of establishing that the district court has personal jurisdiction over [the defendants]." Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007).

## III.

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). Thus, in order to establish personal jurisdiction over the defendants, Cossart must meet the requirements of both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment. The requirements of the Massachusetts long-arm statute are similar to -- although not necessarily the same as -- those imposed by the Due Process Clause. See Good Hope

- 6 -

Indus., Inc. v. Ryder Scott Co., 389 N.E.2d 76, 80 (Mass. 1979) ("Although presented with jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites."); Burtner v. Burnham, 430 N.E.2d 1233, 1235-36 (Mass. App. Ct. 1982) ("It now appears to be recognized that application of [the Massachusetts long-arm statute] requires that (even if the fact pattern of the case is constitutionally acceptable) the circumstances of the particular case come within one of the specific subsections of [the Massachusetts long-arm statute]."). We start by considering whether that statute reaches the two defendants, United Excel and Hornbaker.

**A.**

Section 3(a) of the Massachusetts long-arm statute provides that "[a] court may exercise personal jurisdiction over a person . . . as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a). We must "construe[] the 'transacting any business' language of the statute in a generous manner," and, in applying the clause to these facts, we must focus on "whether the defendant[s] attempted to participate in the commonwealth's economic life." United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st

- 7 -

Cir. 1992).  In deciding whether a claim "aris[es] from" a defendant's "transacting business," moreover, we look to see whether the transacted business was a "but for" cause of the harm alleged in the claim.  See Tatro v. Manor Care, Inc., 625 N.E.2d 549, 551 (Mass. 1994).

Here, United Excel recruited and hired Cossart, a Massachusetts resident, as an employee; registered a sales office with the Commonwealth in order to facilitate his work for the company; and retained him as a Massachusetts-based employee for a period of years.  Moreover, Hornbaker personally negotiated the employment contract that contemplated that this employee would work out of Massachusetts and signed the certificate of registration that established the United Excel sales office in Massachusetts.

Those facts would seem to show -- in straightforward fashion -- that each defendant "attempted to participate in the commonwealth's economic life." United Elec., Radio & Mach. Workers of Am., 960 F.2d at 1087.  But the District Court concluded otherwise, and thus held that the "transacting any business" requirement of Section 3(a) was not met.

With respect to United Excel, the District Court based its conclusion on Tatro, 625 N.E.2d at 551-52, and its reading of the statement in that case that "[g]enerally the purposeful and successful solicitation of business from residents of the

Commonwealth . . . will suffice to satisfy" the "transacting any business" requirement of Section 3(a). See Cossart v. United Excel Corp., No. 14-10307-GAO, 2014 WL 4927041, at *1 (D. Mass. Sept. 30, 2014). The District Court concluded that because Cossart never secured business from a Massachusetts client, and thus "[could not] show that any of [United Excel]'s attempts to transact business in the Commonwealth were successful," Section 3(a) provided no basis for jurisdiction over United Excel. Id.

But Tatro does not hold that the "transacting business" language of Section 3(a) requires that a defendant have successfully solicited business in Massachusetts. And other Massachusetts precedent shows that there is no such requirement. In Haddad v. Taylor, 588 N.E.2d 1375, 1377 (Mass. App. Ct. 1992), for example, the Massachusetts Appeals Court found that a non-resident defendant had transacted business within the meaning of Section 3(a) by negotiating, via telephone and the mail, a contract for the sale of land in Massachusetts while outside the Commonwealth, even though he was not the owner of the land (but instead was acting through a power of attorney) and even though no contract was actually consummated. Thus, the District Court erred in treating the "purposeful and successful solicitation of business" language in Tatro as a necessary -- rather than merely a sufficient -- requirement for jurisdiction under Section 3(a). And without such a requirement, we find that United Excel's conduct

in Massachusetts easily qualifies as "transacting business" within the meaning of Section 3(a).

With respect to Hornbaker, the District Court simply wrote: "There is no evidence that Hornbaker as an individual conducted activities within the scope of the long-arm statute." Cossart, 2014 WL 4927041, at *1. For the reasons given above, we disagree. And precedent supports subjecting corporate officers to jurisdiction under the long-arm statute at least where they are "primary participants" in corporate action, as Hornbaker was. See LaVallee v. Parrot-Ice Drink Prods. Of Am., Inc., 193 F. Supp. 2d 296, 300-02 (D. Mass. 2002); Johnson Creative Arts, Inc. v. Wool Masters, Inc., 573 F. Supp. 1106, 1111-12 (D. Mass. 1983); Kleinerman v. Morse, 533 N.E.2d 221, 224-25 (Mass. App. Ct. 1989) (finding jurisdiction where individual defendant "was the principal actor on behalf of" the corporation).

Finally, we easily conclude that Cossart's claim "aris[es] from" the defendants' transacting business in Massachusetts. As stated above, Tatro held that the business transacted must only be a "but for" cause of the claim to give rise to jurisdiction. 625 N.E.2d at 553-54. That standard is easily met here, where Cossart's claim arose from his work on the California deal -- work he performed in Massachusetts under his employment contract with United Excel and out of the sales office officially registered in Massachusetts by Hornbaker.

**B.**

That leaves the question whether the Due Process Clause blocks the exercise of personal jurisdiction over these defendants. See Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945). The exercise of personal jurisdiction may, consistent with due process, be either "specific or case-linked" or "general or all-purpose". See Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). Because we find that these defendants may constitutionally be subjected to specific jurisdiction, we need not address general jurisdiction.

In determining whether the exercise of specific jurisdiction over an out-of-state defendant conforms to the constitutional limits established by the Due Process Clause, we evaluate "(1) whether the claim directly arises out of, or relates to, the defendant's forum state activities; (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) whether the exercise of jurisdiction is reasonable." C.W. Downer & Co., 771 F.3d at 65 (internal quotation marks and alterations omitted). And, after applying this test, under which all three prongs must be met, see id., we

- 11 -

conclude that due process permits the exercise of specific jurisdiction over both defendants.

**1.**

The first prong of the test, regarding "relatedness," "serves the important function of focusing the court's attention on the nexus between a plaintiff's claim and the defendant's contacts with the forum." Sawtelle, 70 F.3d at 1389. In this case, to determine relatedness, we "must consider the contacts between the defendants and the forum state viewed through the prism of plaintiff['s] . . . claim" for unpaid compensation that is allegedly due under the second employment contract and the Massachusetts Wage Act. Id. Given that we are dealing here with a contract dispute, we pay particularly close attention to "the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." C.W. Downer & Co., 771 F.3d at 66 (internal quotation marks and citation omitted).

The defendants contend that Cossart's claim bears little to no relationship to Massachusetts because the disputed commission arose out of a contract with a California hospital, to be performed in California. And further, the defendants assert that their decision to not move forward with the California deal, and thus to not pay Cossart any commission for his work on that deal, was made in Kansas.

- 12 -

Fundamentally, that argument fails because it overlooks the fact that this lawsuit arises out of an alleged breach not of a contract with a California hospital, but rather of the contract defendants procured with a Massachusetts resident to be performed by the resident primarily from Massachusetts. Nor, for that matter, was the potential California account that triggered the employment-contract dispute without its forum-state contacts.

Cossart performed a substantial portion of the work that led to the potential California account from the Massachusetts sales office that United Excel (through Hornbaker) had registered with the Commonwealth. That work included sending e-mails and making phone calls from Massachusetts to California. At all times, moreover, Cossart was acting within the scope of his employment with United Excel, through an employment relationship the defendants had entered into with full knowledge that Cossart would perform his duties from Massachusetts.

In addition, when final execution of the California contract was "imminent," Cossart contacted Hornbaker from Massachusetts to discuss payment of his commission, which he says he had already earned. And when United Excel, through Hornbaker, refused to pay the commission that was allegedly due, the company did so via e-mail and phone conversations with Cossart in Massachusetts, thereby directly giving rise to this Massachusetts Wage Act claim.

- 13 -

We thus conclude that Cossart's claim relates to United Excel's and Hornbaker's contacts with Massachusetts, for reasons similar to those expressed in our recent decision in C.W. Downer & Co. See id. at 66 ("[The foreign corporate defendant] had an ongoing connection with Massachusetts in the performance under the [inter-firm services] contract. [The resident corporate plaintiff's] claims arise from the alleged breach of that contract. That is enough to establish relatedness."). And so we proceed to the next part of the inquiry: purposeful availment.

**2.**

The record is equally clear that "the defendant[s'] in-state contacts [identified in the relatedness inquiry] represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant[s'] involuntary presence before the state's courts foreseeable," Id. at 65 (quotation marks and citation omitted). Our recent decision in C.W. Downer & Co. once again shows why.

There, we held that an out-of-state company had purposefully availed itself of the privilege of doing business in Massachusetts by retaining the services of a Boston-based investment bank. Id. at 66-69. We rested that judgment on the company's voluntary solicitation of the bank's services; the active formation of a long-term contractual relationship with a

party reasonably known to be in Massachusetts (such that the contracted-for services would foreseeably be rendered there); and the performance of work under that contract by the bank, which was treated as contact with the forum by the out-of-state company because the voluntary contractual relationship had foreseeably led the bank to undertake that work. Id. at 66-67 ("[The forum plaintiff]'s extensive Massachusetts activities in this case, given the context, were not unilateral. They were undertaken at [the non-forum defendant]'s request and are attributable to [the non-forum defendant]." (internal quotation marks omitted)).

Those same factors are present here. United Excel recruited Cossart at his home in Massachusetts. The resulting employment contract, as negotiated by Hornbaker, contemplated that Cossart would continue to work from Massachusetts on United Excel's behalf and that the company would facilitate that work by providing the requisite office equipment.

In the course of performing that contract, moreover, United Excel (through Hornbaker) voluntarily facilitated Cossart's work from Massachusetts by registering a sales office with the Commonwealth and keeping that registration current while Cossart remained a United Excel employee.[3] In addition, in the course of

_____

[3] Indeed, the facts here show even greater purposeful availment than in C.W. Downer & Co. insofar as the non-forum defendants here actively facilitated -- and did not merely

- 15 -

the performance of that agreement, Cossart did significant work for United Excel in Massachusetts -- as the defendants clearly foresaw he would. That work included his efforts to secure the California deal, for which Cossart asserts he is owed a commission under the employment agreement. Finally, United Excel (again through Hornbaker) allegedly breached the employment agreement when it informed Cossart at his Massachusetts home that he would not be paid the commission on the California deal.

The facts that prevented personal jurisdiction in Phillips v. Prairie Eye Center, 530 F.3d 22 (1st Cir. 2008), the principal case cited by defendants, are thus not present here. In Phillips, the non-forum defendant did negotiate a contract with a Massachusetts employee. 530 F.3d at 28-29. But the contract was to be performed by the employee in Illinois, not from a Massachusetts sales office that had been registered with the Commonwealth by the non-forum defendant. See id.

**3.**

In light of our conclusion that the first two prongs of the specific-jurisdiction test are met, we could find that the Due Process Clause bars the exercise of personal jurisdiction over these defendants only if such exercise would not be fair and reasonable. See C.W. Downer & Co., 771 F.3d at 69. To determine

reasonably foresee -- the plaintiff's performance of the contract from Massachusetts.

- 16 -

whether that is the case, we must consider the so-called "gestalt" factors: "(1) the defendant[s'] burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Id.

Here, neither defendant has shown that "some kind of special or unusual burden" would result from Massachusetts serving as the forum. Bluetarp Fin., Inc. v. Matrix Const. Co., 709 F.3d 72, 83 (1st Cir. 2013) (citations and quotation marks omitted); see also C.W. Downer & Co., 771 F.3d at 69 ("Bioriginal identifies no special burden imposed by requiring it to litigate across the Canada–United States border . . . ."). And Massachusetts clearly has an interest in being the forum that determines whether Cossart, who performed his work for the company in the Commonwealth, has a meritorious claim under the Massachusetts Wage Act. Cf. C.W. Downer & Co., 771 F.3d at 70 ("Massachusetts has 'significant' interests in providing a convenient forum . . . when [its citizens'] commercial contracts are said to be breached by out-of-state defendants."). The remaining factors relevant to the inquiry also do not indicate a problem with Massachusetts serving

- 17 -

as the forum state.  We therefore conclude that constitutional due process does not bar Massachusetts from doing so.

## IV.

For the foregoing reasons, we **reverse** the District Court's order and judgment of dismissal for lack of personal jurisdiction as to both defendants and we **remand** for further proceedings.