# United States Court of Appeals
## For the First Circuit

No. 15-1330

COPIA COMMUNICATIONS, LLC,

Plaintiff, Appellant,

v.

AMRESORTS, L.P.; SEAWIND KEY INVESTMENTS, LIMITED,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Lynch, Selya, and Kayatta,
Circuit Judges.

Philip M. Giordano, with whom Siobhan M. Tolan, Giordano & Company, P.C., and Reed & Giordano, P.A., were on brief, for appellant.

Jack W. Pirozzolo, with whom Michelle Hartmann and Sidley Austin LLP, were on brief, for appellee AMResorts, L.P.

Brett D. Carroll, with whom Ari Zivyon and Holland & Knight LLP, were on brief, for appellee Seawind Key Investments, Limited.

January 13, 2016

**KAYATTA**, **Circuit Judge**.  In this action, Massachusetts company Copia Communications, LLC ("Copia"), sues Jamaican resort operator Seawind Key Investments, Limited ("Seawind"), and Seawind's alleged alter-ego, the Pennsylvania limited partnership AMResorts, L.P. ("AMResorts"), for the alleged breach of a contract between Copia and Seawind.  The contract at issue was proposed and executed in Jamaica, performance on the contract occurred (as was intended) almost exclusively in Jamaica, and the contract is governed by the laws of Jamaica.  The district court dismissed Copia's complaint for lack of personal jurisdiction over the defendants, neither of which operates any business or has any corporate presence in Massachusetts.  We easily affirm.

## I.  Background

We derive our recitation of the case's facts from Copia's properly documented evidentiary proffers and from those portions of the defendants' proffers that are undisputed.  See Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007).

Copia is a Massachusetts limited liability company that provides internet services to hotels in Jamaica, where Copia has offices.  In October 2006, a Copia employee sent Seawind an offer to provide internet services at two Jamaican resorts that Seawind was then planning.  Through 2009, Copia's Chief Executive Officer, Darryl Wehmeyer ("Wehmeyer"), negotiated with Seawind, a process that involved several meetings in Jamaica and during which no

Seawind employees traveled to Massachusetts. During negotiations, Wehmeyer communicated by email with several Seawind employees and alleged AMResorts employees,[1] and he may have sent or received some of these emails while in Massachusetts. Neither Seawind nor AMResorts does business; pays taxes; has an office, bank account, or employee; or holds property in Massachusetts.

On June 29, 2009, the negotiations culminated in a contract, which Wehmeyer signed in Jamaica on behalf of Copia. The contract identifies Copia as a Massachusetts corporation and lists Copia's Massachusetts address. It provides that any notice or service of legal process arising out of the contract must be made at the "registered office" of the recipient. Under the contract, Copia agreed to install internet services at two Seawind resorts and to provide ongoing on-site support and maintenance. Seawind agreed to make payment in U.S. dollars and to comply with all relevant U.S. export regulations for any equipment it was to receive under the contract. The contract provides that it is governed by Jamaican law.

During the performance of the contract, Copia shipped equipment to Jamaica from Massachusetts, Seawind addressed payment to Copia's Massachusetts address, and Wehmeyer sometimes received

---

[1] AMResorts is a Pennsylvania limited partnership. Copia alleges that AMResorts manages the Seawind-owned resorts for which Copia provided internet services under the contract here at issue.

- 3 -

contract-related phone and email communications in Massachusetts. Installation and maintenance of the internet services occurred entirely in Jamaica, with Jamaica-based Copia employees working on-site at Seawind's resorts on a daily basis. No Seawind employee traveled to Massachusetts during the contract term.

On April 28, 2014, Wehmeyer received a letter via email attachment from the general manager of the two resorts receiving Copia's services under the contract. Addressed to Copia's Massachusetts office, the letter stated that Seawind was not renewing the contract. Copia contested the timeliness of the notice of nonrenewal and brought this action against Seawind and AMResorts in federal district court in Massachusetts, asserting various claims in contract, tort, and equity, and under Massachusetts's consumer protection statute. Both defendants moved to dismiss, arguing lack of personal jurisdiction and forum non conveniens. The district court found that it lacked personal jurisdiction over the defendants and so dismissed the case without prejudice. This appeal timely followed.

## II. Analysis

### A. Standard of Review

The district court based its jurisdictional ruling on the prima facie record instead of holding an evidentiary hearing or making factual findings, so our review is de novo. C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir.

2014).  In conducting this review, we ask whether Copia has "proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction" when considered together with the undisputed proffers put forward by the defendants.  Adelson, 510 F.3d at 48 (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).

**B.  The Governing Law**

To carry its burden of proving that personal jurisdiction exists in this action, Copia must "demonstrate that the Massachusetts long-arm statute," Mass. Gen. Laws ch. 223A, § 3, "grants jurisdiction over [the defendants] and that the exercise of that jurisdiction comports with the Due Process Clause of the Fifth Amendment."  Adelson, 510 F.3d at 48.  This court has sometimes treated the limits of Massachusetts's long-arm statute as coextensive with those of the Due Process Clause.  See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002) (citing "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 280 N.E.2d 423, 424 (Mass. 1972)).  Recently, however, we have suggested that Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution.  See Cossart v. United Excel Corp., 804 F.3d 13, 18–19 (1st Cir. 2015) (citing Good Hope Indus., Inc. v. Ryder Scott Co., 389 N.E.2d 76, 80 (Mass. 1979)).  We need not address this possible tension in our precedent here,

- 5 -

however, because both defendants treat the statutory and constitutional standards as identical and so have waived any argument that the long-arm statute does not reach as far as the Fifth Amendment allows. Accordingly, we proceed directly to the constitutional inquiry.

Under the Fifth Amendment, a court may exercise general or specific jurisdiction over an out-of-state defendant only if that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). When such contacts are "so 'continuous and systematic' as to render [a defendant] essentially at home in the forum State," that state holds general jurisdiction over the defendant as to all claims. Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011) (quoting Int'l Shoe, 326 U.S. at 317). Because Copia waives any argument that Massachusetts may exercise general jurisdiction over the defendants, Copia must demonstrate that the defendants' contacts with Massachusetts are sufficient to establish Massachusetts's specific jurisdiction over this contract action.[2]

---

[2] Because all of Copia's claims are entwined in its contract claims, none demand separate analysis. See Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir. 2008).

Under our precedent, a plaintiff seeking to establish specific jurisdiction must show that each of three conditions is satisfied:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir. 2008) (quoting Adelson, 510 F.3d at 49). While we doubt that Copia has come close to satisfying any of these three conditions, we can comfortably rest the disposition of this appeal on an analysis of how Copia fails to demonstrate that the defendants' few contacts with Massachusetts represent a purposeful availment of the protections of Massachusetts's laws.[3]

---

[3] There is a factual dispute over the precise relationship between Seawind and AMResorts. But because Seawind, as the ostensible contract participant, lacks sufficient Massachusetts contacts to fall subject to the state's jurisdiction, we lack jurisdiction over AMResorts a fortiori even if we assume, favorably to Copia, that Seawind and AMResorts are alter-egos of one another. Of course, Copia argues that AMResorts--and not necessarily Seawind--has a regional director for group sales for customers "in the Northeast, which presumably includes the Commonwealth of Massachusetts." But even if this sort of presumptive contact were meaningful, Copia has not explained how it relates to the contract dispute here at issue--and such a relationship is necessary for specific jurisdiction. See Harlow v. Children's Hosp., 432 F.3d 50, 60–61 (1st Cir. 2005). Accordingly, finding no other alleged Massachusetts contacts that are unique to AMResorts, we proceed to

## C.  Purposeful Availment

In determining whether the purposeful availment condition is satisfied, our "key focal points" are the voluntariness of the defendants' relevant Massachusetts contacts and the foreseeability of the defendants falling subject to Massachusetts's jurisdiction.  See Adelson, 510 F.3d at 50.  As an operator of luxury resorts in the Caribbean, Seawind does advertise in Massachusetts, has Massachusetts residents among its customers, and has some arrangements with travel agents in Massachusetts.  No claim in this lawsuit, though, arises out of or relates directly to any of these contacts, so they are not relevant to our specific jurisdiction analysis.  See Harlow v. Children's Hosp., 432 F.3d 50, 60-61 (1st Cir. 2005) (contacts relevant for specific jurisdiction are those to which the cause of action is related).  In its relevant, i.e., contract-related, dealings with Copia, Seawind sought no privilege to conduct any activities in Massachusetts and did nothing to invoke the benefits and protections of Massachusetts's laws beyond implicitly relying on the state's laws in the way that any party to a contract relies on the laws of the jurisdiction in which his counter-party happens to reside.  Cf. Prairie Eye Ctr., 530 F.3d at 28-29 (in a contract suit, defendant's awareness of plaintiff's location in forum

---

treat the defendants as identically situated for ease of exposition.

- 8 -

state, combined with defendant's occasional transmission of contract-related communications into forum state, was insufficient to establish defendant's purposeful availment of forum state).

Copia's efforts to draw support from its portrayal of Seawind's performance (or "nonperformance") of the contract serve only to highlight the absence of any meaningful attempt by Seawind to secure the protections of Massachusetts's laws. Copia points to Seawind's receipt of equipment shipped by Copia from Massachusetts as a voluntary contact between the defendants and the forum state. We view the origins of such shipments, instead, as resulting from Copia's own "unilateral activity." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 417 (1984)). The contract does not require shipment from any particular state, and there is no evidence that the defendants cared about the geographic origin of the shipments. Similarly, the contract's requirements that Seawind make payment in U.S. dollars and comply with U.S. export law when applicable create no explicit expectation of contact between Seawind and Massachusetts in particular. And the contract's requirement that Seawind give legal notice to Copia at Copia's "registered office," as we can assume Seawind did when sending notice of nonrenewal,[4] represented a convenience for Copia

---

[4] Copia points to its receipt of the nonrenewal notice in Massachusetts to suggest that Massachusetts was the site of Copia's

- 9 -

rather than the type of availment by Seawind that would justify Copia haling Seawind into Massachusetts court on a contract that otherwise created no link between Seawind and Massachusetts.

Finally, Copia argues that our decision in C.W. Downer & Co., 771 F.3d 59, somehow compels us to find purposeful availment here. It does not. In Downer, an employee of a Canadian business traveled to the Boston headquarters of a Massachusetts investment bank to discuss the Canadian business's imminent sale. Id. at 63. During the ensuing "four-year working relationship" between the parties, id. at 67, the Massachusetts bank performed "extensive services" in Massachusetts, id. at 69, requiring "intensive[]" collaboration between the out-of-state business and the bank's Boston-based team, id. at 67. We have recently described Downer's determination that the Canadian business had "purposefully availed itself of the privilege of doing business in Massachusetts" as hinging on three factors: the defendant's in-forum solicitation of the plaintiff's services, the defendant's anticipation of the plaintiff's in-forum services, and the plaintiff's actual performance of extensive in-forum services. Cossart, 804 F.3d at

---

alleged breach. See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 291 (1st Cir. 1999) (breach of contract arguably takes place "where a promisor fails to perform"). But regardless of any significance this argument may have for specific jurisdiction's relatedness inquiry, it does not suggest that Seawind purposefully availed itself of Massachusetts's laws. In any event, as we have discussed, Seawind had no contractual duty to perform in or send payment into Massachusetts specifically.

- 10 -

None of those factors are present to remotely the same degree here.

In sum, Seawind did no more than welcome in Jamaica Copia's offer to provide equipment and services to Seawind in Jamaica, and Seawind had no relevant contact with Massachusetts beyond the insubstantial contacts that anyone would have when buying goods and services from a company that itself happens to be in Massachusetts. None of this by itself represents the type of purposeful availment of the privilege of conducting business in Massachusetts that would have made it reasonably foreseeable that Seawind could be "haled into court" in Massachusetts on its contract with Copia. Burger King, 471 U.S. at 486 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The district court therefore correctly dismissed this lawsuit for lack of personal jurisdiction.[5]

### III.  Conclusion

Finding the unconsented exercise of personal jurisdiction over the defendants barred by the Due Process Clause of the Fifth Amendment, we affirm the district court's dismissal for lack of jurisdiction.

---

[5] Because we find that Copia has not shown purposeful availment, we need not proceed to consider whether it would be reasonable for Massachusetts to exercise jurisdiction. Likewise, we need not consider the defendants' alternate argument for dismissal on forum non conveniens grounds.