LIPEZ, Circuit Judge, dissenting.
In concluding that the federal court in Puerto Rico lacks personal jurisdiction over the defendants in this case, the majority downplays the significance of the bad-faith negotiations claim and fails to view the facts alleged in the light most favorable to the plaintiff. Properly evaluated, however, those facts establish the elements of personal jurisdiction for PREP Tours' lawsuit against three of the defendants.[24] Given these circumstances, I cannot join my colleagues in affirming dismissal of PREP Tours' complaint.
I.
A. Overview
My disagreement with the majority stems primarily from their depiction of the facts proffered by PREP Tours in support of jurisdiction.[25] In brief summary, defendants asked PREP Tours to plan a soccer tour in Puerto Rico for more than 250 people. Then, on the brink of formalizing an agreement based on PREP Tours' considerable efforts, defendants made a last-minute switch to a different tour company. Contrary to my colleagues' depiction of the parties' relationship as undeveloped and "preliminary," the record demonstrates an increasingly solid commitment by defendants to do business with PREP Tours. Defendants' sudden abandonment of PREP Tours after the company invested substantial resources to create defendants' desired itinerary permits a plausible inference of bad faith, a key component of PREP Tours' contention that it was harmed by defendants' actions.
B. Culpa in Contrahendo
Under Puerto Rico law, the obligation to negotiate contracts in good faith is known *31 as the culpa in contrahendo doctrine. See Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Techs. GmbH, 781 F.3d 510, 516 (1st Cir. 2015). The doctrine varies from the common law requirement of good-faith negotiation not only because it sounds in tort rather than contract, but also because it encompasses a broader range of conduct. See Ysiem Corp. v. Commercial Net Lease Realty, Inc., 328 F.3d 20, 24 (1st Cir. 2003). In general, the culpa in contrahendo doctrine is "used to compensate a party for the expenses it incurred in reliance on the other party's offer to form a contract when the contract negotiations break down." Velázquez Casillas v. Forest Labs., Inc., 90 F. Supp. 2d 161, 166 (D.P.R. 2000). We have explained that "[a] party's withdrawal from contractual negotiations may be considered a violation of the duty of good faith if: (1) the withdrawal was arbitrary or without justification; and (2) the other party had a reasonable expectation that a contractual agreement would be consummated." Advanced Flexible Circuits, 781 F.3d at 516-17.[26]
PREP Tours' complaint alleges a classic instance of frustrated expectations, with defendants taking the parties' negotiations to the brink of a formal agreement before pulling out. The culpa in contrahendo tort claim must thus be at the fore of the evaluation of personal jurisdiction.[27] Cf. Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 n.2 (1st Cir. 2016) (noting that "[b]ecause all of [plaintiff]'s claims are entwined in its contract claims, none demands separate analysis").
II.
As the majority opinion sets out, the constitutional inquiry for specific personal jurisdiction consists of three prongs: relatedness, purposeful availment, and reasonableness. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 60 (1st Cir. 2002) ; Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).[28] The majority *32 considers only the purposeful availment prong and, concluding that it does not support personal jurisdiction, does not address the other two prongs. Accordingly, I, too, primarily focus on purposeful availment.
The purposeful availment inquiry requires us to determine whether the defendants have targeted their conduct "toward the society or economy of a particular forum [such that] the forum should have the power to subject the defendant to judgment regarding that behavior." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 36 (1st Cir. 2016) (quoting Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011) ) (alteration in original). This assessment ensures that personal jurisdiction is not premised solely on defendants' " 'random, isolated or fortuitous contacts' with the forum state." Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007) (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995) ).
The "cornerstones" of purposeful availment are voluntariness and foreseeability. Daynard, 290 F.3d at 61 (quoting Sawtelle, 70 F.3d at 1391 ). Voluntariness means that a defendant's "contacts with the forum state 'proximately result from actions by the defendant himself.' " Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ). Foreseeability means that "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
The majority relies heavily on our decision in Copia, 812 F.3d at 5-6, in concluding that defendants' actions in dealing with PREP Tours are insufficient to satisfy the purposeful availment requirement. Given Copia's importance to the majority's analysis, describing the case in some detail helps to explain why our court's rejection of personal jurisdiction there does not control the outcome here.
In Copia, the plaintiff was a Massachusetts company that brought suit in Massachusetts against a Jamaican resort operator and its Pennsylvania alter ego for an alleged breach of contract. The Jamaican company had virtually no connection with Massachusetts. The negotiations between the parties were initiated by the plaintiff, not the defendant -- i.e., the parties' relationship began with the Massachusetts plaintiff reaching out to the defendant in Jamaica. The contract at issue was for services to be performed in Jamaica, with Jamaican employees, and under Jamaican law. The defendant's only Massachusetts contacts consisted of sending a few emails to plaintiff's CEO in Massachusetts and receiving equipment shipped from there.
Unsurprisingly, the Copia panel held that the Jamaican resort could not be haled into court in Massachusetts to defend the breach of contract claim. Copia, 812 F.3d at 6. Drawing on earlier precedents of our court, we noted three factors as relevant to purposeful availment: "the defendant's in-forum solicitation of the plaintiff's services, the defendant's anticipation of the plaintiff's in-forum services, and the plaintiff's actual performance of extensive in-forum services."[29] Id. The panel found *33 that the plaintiff failed to satisfy any of the three factors. First, the Jamaican resort had not solicited services from the plaintiff; rather, the plaintiff had contacted the resort. Second, the Jamaican resort would not have anticipated that services under the contract would be performed in Massachusetts given that the contract was for services to be performed in Jamaica. Third, the services under the contract were actually performed in Jamaica, excepting some "insubstantial contacts that anyone would have when buying goods and services from a company that itself happens to be in Massachusetts." Id. [30]
Here, by contrast, there are far more substantial connections between defendants and the forum. Indeed, applying the Copia factors to the facts of this case reveals the error in the majority's analysis.[31]
A. Solicitation of plaintiff's services
It is difficult to imagine a more clear-cut instance of an out-of-forum defendant voluntarily and directly soliciting an in-forum plaintiff's services. In November 2012, defendants commenced a four-month period of communications with PREP Tours, initially seeking information about options available in Puerto Rico for their soccer group's possible tour. PREP Tours first responded with a standard promotional brochure describing a youth soccer program available in Puerto Rico. Defendants' initial inquiry unquestionably was preliminary -- it did not even identify Puerto Rico as the confirmed destination -- and PREP Tours' response likewise involved no individualized effort on behalf of defendants. However, even though defendants' initial contact merely opened the door to a possible business relationship with PREP Tours in Puerto Rico, that first step acquired greater significance when the defendants subsequently started to solidify their plans with PREP Tours for a trip to Puerto Rico. Without question, Copia's solicitation prong is satisfied.
B. Defendants' anticipation of in-forum services and plaintiff's actual performance of in-forum services[32]
The parties' relationship progressed rapidly after defendants' initial inquiry. PREP Tours prepared a proposed itinerary, and the parties thereafter engaged in an exchange of emails in which defendants requested changes, PREP Tours responded with revisions, and the agency reserved hotels and flights. In their first round of requests, defendants asked PREP Tours to schedule two or three soccer games, two or three excursions for players and parents, and "free time for families to go on their own," all while keeping the cost to $2,000 per person, including airfare. PREP Tours complied and sent a revised itinerary to defendants.
*34 Unsatisfied with the revised itinerary, defendants requested further modifications and specifications in late December 2012, including: (1) extending the length of the trip and scheduling it for July 8-18, with specific arrival and departure dates for various components of the tour; (2) scheduling three local soccer games (i.e., specifying three, rather than possibly two, games); (3) and, again, directing that the overall cost of the trip remain at or below $2,000 per person. PREP Tours again complied, producing a third itinerary. Meanwhile, as PREP Tours worked to accommodate defendants' requests, defendants expressed satisfaction with PREP Tours' efforts and an intention to move forward with the trip arranged by PREP Tours. Defendants stated in a December email that they "loved [PREP Tours'] itinerary as opposed to [another] agency" and wanted to "seal the deal" so that the parents could start "pay[ing] the agency."
Any remaining doubt about defendants' commitment to PREP Tours was dispelled by the parties' communications in January 2013. Defendants sent PREP Tours a list of trip participants with ages and desired hotel accommodations. One of defendants' last emails to PREP Tours stated that AYSO's Region 24 board members would be contacting PREP Tours "for the financial part" and that, barring any "red flags," everything was going to "run smoothly." In a separate email thread, Hakuna Matata, the travel agency engaged by PREP Tours, contacted defendants seeking payment for the reserved flights.
Given these interactions, defendants had to understand that PREP Tours was taking significant steps to create an itinerary to satisfy their specific, changing requirements. Nevertheless, my colleagues question PREP Tours' allegation that it expended considerable effort to meet defendants' demands, maintaining that defendants' communications sought only "tweak[s]" to the initial itinerary.[33] In addition, my colleagues state that a self-proclaimed tour "specialist" would not need much effort to plan such a tour. This speculative depiction of the record, suggesting that the series of requested revisions required minimal, if any, work by PREP Tours, fails to draw all reasonable inferences in PREP Tours' favor. See Carreras, 660 F.3d at 552 (noting that, in assessing specific jurisdiction, the court must view the evidence "in the light most favorable to the plaintiff and draw all reasonable inferences therefrom in the plaintiff's favor"). To the contrary, it is reasonable to infer that drafting each new itinerary involved re-engaging with service providers to discuss new costs and timing (including booking hotels and flights), and reconfiguring the tour to satisfy defendants' specific budget and schedule demands.[34]
*35 Moreover, the proposed trip was a major undertaking, involving travel, accommodations, meals, and activities for a group of 252 people, and represented an estimated half million dollars in business for PREP Tours and additional revenue for other Puerto Rico businesses. A trip of such magnitude inevitably would take substantial effort to plan and execute. And, indeed, the record confirms that PREP Tours did make considerable efforts on defendants' behalf. In addition to the work designing and reconfiguring the itineraries described above -- and with defendants' acknowledgement that they were close to formally engaging PREP Tours -- the company proceeded to make concrete arrangements with other businesses, including flight and hotel reservations.
The majority appears to contend that PREP Tours' provision of in-forum services must be viewed as largely unilateral -- and thus irrelevant to the question of whether defendants could foresee being haled into court in Puerto Rico. The suggestion of one-sided activity is unsupportable, however, given defendants' series of emails expressly asking PREP Tours to develop itineraries with specified requests.[35] It should have been obvious to defendants that PREP Tours could not respond to their inquiries without engaging with local companies -- repeatedly -- to ensure availability at the requested times and to determine the tour's cost.
Despite these extensive and extended interactions, driven by defendants' repeated requests, my colleagues also characterize the negotiations between the parties as "preliminary" in an effort to minimize the scope and quality of PREP Tours' efforts. Yet, negotiations prior to a formal agreement are always preliminary in a sequential sense. Here, the pre-contractual negotiations went well beyond the "just inquiring" phase to the brink of an agreement. Thus, discounting the extent of PREP Tours' in-forum activities because they were preliminary to a formal agreement unfairly ignores the significance of those activities for the purposeful availment inquiry. Put another way, defendants' contacts with PREP Tours forged a business relationship that was sufficiently developed to "cross[ ] the purposeful availment threshold." Baskin-Robbins, 825 F.3d at 39.
C. Summary
The circumstances here differ markedly from those in Copia. The facts alleged by PREP Tours, together with the reasonable inferences drawn therefrom, show that defendants targeted their conduct toward Puerto Rico and Puerto Rico businesses such that they should have foreseen the likelihood of being haled into court in Puerto Rico if a business dispute arose. See Burger King, 471 U.S. at 474, 105 S.Ct. 2174. The primary products of a tour company include its ability to design an attractive itinerary suited to travelers' specified needs, and its capacity to reduce that itinerary to a confirmed plan with service providers. PREP Tours moved forward with that process, urged on by defendants' expression of satisfaction and indications *36 that defendants were ready to "seal the deal." The flight and hotel reservations that PREP Tours secured reflect the firmness of the arrangements.
The fact that no contract ultimately was signed, and that the services performed therefore did not lead to additional activity by PREP Tours, does not diminish the extent of the work PREP Tours had performed when defendants abruptly pulled out of the relationship. Indeed, the essence of PREP Tours' tort claim is that the defendants unfairly ended the relationship, denying PREP Tours the opportunity to perform additional, compensable work that should have been the return on their pre-contractual investment of time and resources.[36]
Moreover, the abrupt termination of the negotiations permits a reasonable inference that defendants strung PREP Tours along to extract, at no cost, the maximum advantage from its local knowledge and contacts, with the intent to pass along that information to the company that would ultimately be providing the Puerto Rico tour. Contrary to the scenario in Copia, the defendants' contacts with the forum were far from "random, isolated or fortuitous," Adelson, 510 F.3d at 50 (quoting Sawtelle, 70 F.3d at 1391 ), and the Puerto Rico district court "should have the power to subject [ ] defendant[s] to judgment regarding th[eir] behavior," Baskin-Robbins, 825 F.3d at 36 (quoting Carreras, 660 F.3d at 555 ).
III.
Having thus explained why PREP Tours has satisfied the purposeful availment prong of the personal jurisdiction inquiry, I turn to the remaining components: relatedness and reasonableness.
A. Relatedness
The relatedness prong "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994). Specifically with reference to PREP Tours' tort claim, it is apparent that the contacts described above -- i.e., the ongoing interactions between defendants and PREP Tours to plan the soccer tour to Puerto Rico -- are the core of the alleged bad-faith negotiations cause of action. Furthermore, the injury to PREP Tours from defendants' alleged freeloading was foreseeable to defendants, who misused a "product" -- the development of a specialized local itinerary -- that PREP Tours was selling.
Although defendants argue that the alleged injury occurred elsewhere -- i.e., in California, where they ultimately contracted with a local company -- the asserted tortious conduct was directed at Puerto Rico and the alleged harm occurred there. Where a defendant's contacts primarily consist of remote communications, we necessarily focus on the target of the communications and the effects in that forum. See Calder v. Jones, 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (holding that jurisdiction in California was proper when the effects of defendants' intentional conduct in Florida were felt, and caused a tortious injury, in California). Accordingly, *37 defendants' substantial contacts with Puerto Rico clearly relate to the culpa in contrahendo tort claim.
B. Reasonableness
After a plaintiff has satisfied the relatedness and purposeful availment prongs of the personal jurisdiction analysis, defendants may nonetheless show that it would be unreasonable for the plaintiff's chosen forum to exercise jurisdiction over them. Courts have identified five so-called "gestalt factors" that "put into sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction in particular situations." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). Those factors are:
(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.
Adelson, 510 F.3d at 51 (quoting United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992) ).
Here, the factors inescapably weigh in favor of finding jurisdiction in Puerto Rico. First, despite defendants' assertion that it would be costly and burdensome for a non-profit organization located in California to litigate in Puerto Rico, litigants can electronically submit filings to a court and video-conference from anywhere in the country, reducing the need to travel. Absent a "special or unusual burden," Pritzker, 42 F.3d at 64, defendants cannot assert distance as a barrier. Second, as to the forum state's interest, Puerto Rico has a clear interest in protecting its residents from conduct that targets and injures them. See, e.g., McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (noting a state's "manifest interest in providing effective means of redress for its residents when" they are injured by an out-of-state party). Third, PREP Tours' interest in resolving the dispute in Puerto Rico is obvious, and we have held that a plaintiff's choice of forum must be afforded a degree of deference. See Ticketmaster, 26 F.3d at 211. Fourth, we have observed that all sovereigns share an interest in "ensuring that [the sovereign's] companies have easy access to a forum when their commercial contracts are said to be breached by out-of-state defendants." Downer, 771 F.3d at 70. Puerto Rico's culpa in contrahendo doctrine reflects this interest in ensuring that injuries arising from pre-contractual relationships are conveniently redressed.[37]
In sum, the gestalt factors do not even remotely show that it would be unfair for defendants to be "haled into court" in Puerto Rico to respond to PREP Tours' allegations. World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. 559.
IV.
Fairly read, with inferences properly drawn in favor of PREP Tours, the record reveals that personal jurisdiction over defendants is proper in Puerto Rico, PREP Tours' chosen forum. Accordingly, this case should not have been dismissed, and I therefore respectfully dissent.

I agree that dismissal is proper for Armando Rodríguez, Ramón Aguilar, and Carl Jackson, but conclude that the case should proceed against the American Youth Soccer Organization ("AYSO"), its regional affiliate ("Region 24"), and a Region 24 volunteer, Alicia Ramírez (collectively, "defendants"). For simplicity, I assume that Ramírez was an agent of AYSO and Region 24 and, thus, that these three defendants are in the same position vis-à-vis PREP Tours.

The district court chose the "prima facie" method -- "the least taxing" standard for a plaintiff -- to determine whether PREP Tours had met its personal jurisdiction burden. Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008) (quoting Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997) ). In line with that method, the facts on which I rely are drawn from PREP Tours' complaint and the supplemental materials contained in the record. See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016) (noting that when conducting a personal jurisdiction analysis under the prima facie standard, a court must "take the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record"); see also Sawtelle v. Farrell, 70 F.3d 1381, 1385-86 (1st Cir. 1995) (explaining that in assessing a motion to dismiss based on lack of personal jurisdiction, the court may consider supplemental materials such as affidavits).

Some jurisdictions have similarly found a duty to negotiate in good faith after the parties have negotiated important terms in a potential contract but other terms remain open. See, e.g., Flight Sys., Inc. v. Elec. Data Sys. Corp., 112 F.3d 124, 130 (3d Cir. 1997) (Pennsylvania); Sunnyside Cogeneration Assocs. v. Cent. Vt. Pub. Serv. Corp., 915 F.Supp. 675, 680 (D. Vt. 1996) ; Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co., 670 F.Supp. 491, 498 (S.D.N.Y. 1987) ; Markov v. ABC Transfer & Storage Co., 76 Wash.2d 388, 457 P.2d 535, 539-40 (1969). Moreover, other jurisdictions have acknowledged some pre-contractual liability when the parties started negotiations toward a contract but for some reason an agreement could not be reached. See, e.g., Chrysler Corp. v. Quimby, 144 A.2d 123, 128-29 (Del. 1958) ; Hoffman v. Red Owl Stores, Inc., 26 Wis.2d 683, 133 N.W.2d 267, 274-75 (1965).

By focusing on the tort claim, I am not suggesting that the purposeful availment analysis varies from cause of action to cause of action when the same contacts are asserted as the basis for personal jurisdiction. Nonetheless, "[q]uestions of specific jurisdiction are always tied to the particular claims asserted," Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir. 1999), and "the quality and nature of the defendant's activity" is part of the calculus, Harlow v. Children's Hosp., 432 F.3d 50, 58 (1st Cir. 2005) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ). I highlight the bad-faith claim because -- given the nature of defendants' contacts with PREP Tours -- the tort claim reveals so clearly the error in the majority's purposeful availment analysis and the unfairness of the outcome.

Where a state's long-arm statute extends to the constitutional limit, as in Puerto Rico, we may address the statute's requirements by conducting the constitutional due process analysis. See Dalmau Rodriguez v. Hughes Aircraft Co., 781 F.2d 9, 12 (1st Cir. 1986).

These factors were previously applied in two cases where the out-of-forum defendants' contacts occurred primarily through remote communications. See Cossart v. United Excel Corp., 804 F.3d 13, 21 (1st Cir. 2015) ; C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 66-67 (1st Cir. 2014). Although the focus on these factors may not be suited for all remote communications cases -- particularly where the plaintiff's claims sound primarily in tort -- focusing on them here is appropriate to highlight the differences between my view of the facts and the majority's view.

Although some equipment was shipped from Massachusetts, the contract did not require shipment from any particular location. See Copia, 812 F.3d at 5.

The majority also contrasts the facts here with the two primary cases on which PREP Tours relies to argue that personal jurisdiction is appropriate: Downer, 771 F.3d at 67, and Cossart, 804 F.3d at 21. As the majority acknowledges, however, Downer and Cossart do not "purpor[t] to establish the minimum connection to the forum that must be shown to establish personal jurisdiction." Hence, I see no need to compare the facts here with those cases to show that PREP Tours has shown the requisite connection.

The second and third Copia factors substantially overlap, and I will therefore analyze them together.

In one of their emails, defendants referred to PREP Tours' modifications of the itinerary as "tweaks."

In support of this inference, PREP Tours alleges in its complaint that defendants "caused [PREP Tours] to invest an enormous time and effort into preparing a package for [the tour] ... according to defendants' specifications." The parties' supplemental filings support that PREP Tours reached out to other Puerto Rico companies on defendants' behalf. In one email reporting revisions to the itinerary, PREP Tours emphasized "the due diligence, dedication, research, hotel, transportation and schedule planning devoted to [defendants'] requests."
The majority states that PREP Tours did not allege that it "contacted a single other business, soccer team, or person who did not work for PREP Tours in response to the defendants' inquiry." (Emphasis added.) If the majority is suggesting that PREP Tours did not contact anyone with whom they had no prior dealings, I fail to see the relevance of that fact. Even if some of these businesses had previously given a quote, it is a reasonable inference that PREP Tours had to contact them again each time defendants asked to modify the itinerary.

My colleagues, for example, state that PREP Tours was "push[ing]" defendants for more details when the company asked for the number of trip participants, which prompted Ramírez to send a document listing the names of players and coaches and indicating that a total of 252 people would be on the trip. Taken in the light most favorable to PREP Tours, however, the inquiry about participants was in fact a response to defendants' request to provide a quote for the tour that did not go above $2,000 per person.

In maintaining that the defendants' contacts here were less substantial than those found inadequate in Copia, the majority points out that the Copia negotiations involved "numerous contacts between the parties to secure an ongoing services relationship." But the quantity of contacts was not the problem in Copia; rather, the contacts were not sufficiently connected to the forum. Here, by contrast, every communication between the parties was sent to or from Puerto Rico, and each related to services to be performed in Puerto Rico. Hence, the substance of the contacts here -- i.e., the direct link to Puerto Rico -- carries far more weight in showing purposeful availment.

The fifth factor, the judicial system's interest, has no particular significance here. Although this litigation is already underway in Puerto Rico, and starting the suit anew in California would involve another court system, that situation presumably would exist in every case in which personal jurisdiction is challenged.